ROLLIN E. HARMON, Judge of Probate (for the benefit of the National Casket Company), *vs.* JOHN L. SWEET, administrator, & another.

SAME (for the benefit of the Porter Livery Company) *vs.* SAME.

Essex.　March 11, 1915. — September 16, 1915.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Bond. Executor and Administrator. Insolvent Estate of Deceased Person. Practice, Civil,* Agreement as to facts, Appeal. *Judgment,* On bond.

If, upon demand being made, an administrator with the will annexed of an estate which has not been represented to be insolvent neglects to pay an

execution issued on a judgment against him in his official capacity or to show sufficient goods or estate of the testator to satisfy the judgment, there is *prima facie* a breach of his bond given as prescribed by R. L. c. 149, § 1, cl. 1.

The provision of R. L. c. 149, § 20, that "Bonds given by executors or administrators for the performance of their trust may be put in suit by a creditor of the deceased for his own benefit, when such creditor has recovered judgment for his debt against the executors or administrators and they have neglected upon demand made by him to pay the same or to show sufficient goods or estate of the deceased to be taken on execution for that purpose," not only gives the judgment creditor, where the estate has not been represented to be insolvent, a right to put the bond in suit without obtaining authority to do so from the Probate Court, but, taken in connection with the whole scheme for winding up the estate of a deceased person as provided for by our statutes, it also means that the failure under the circumstances stated to pay or to exhibit sufficient goods or estate of the deceased is *prima facie* a breach of the second condition of the executor's or administrator's bond.

By R. L. c. 142, § 2, which provides that "If the probate court finds from the representation of an executor or administrator that the estate of the deceased will probably be insufficient for the payment of his debts, it may appoint two or more commissioners to receive and examine all claims of creditors against such estate, and to return a list of all claims presented to them, with the amount allowed on each claim," it is made the duty of an executor or administrator to represent the estate of the deceased to be insolvent if it appears that the estate is insufficient to pay all debts of which he has had notice.

Where as stated above there is *prima facie* a breach of the second condition of the bond of an administrator, the administrator is liable on his bond unless he represents the estate to be insolvent and establishes under R. L. c. 141, § 5, the affirmative defence that upon the settlement of his account in the Probate Court the whole estate and effects which have come to his hands have been exhausted in paying the charges of administration and debts or claims entitled by law to a preference over the common creditors of the deceased.

To establish such an affirmative defence based on a representation of insolvency it must appear by a final adjudication that the estate is insolvent.

After the representation of insolvency is made, the administrator and his sureties are entitled to have the action on the bond continued until the result of the representation of insolvency is ascertained.

Where an action at law is heard by a judge without a jury, and the parties instead of putting in their evidence agree in writing upon certain facts on which the case is to be decided under the pleadings, this is not a submission of the case upon an agreed statement of facts, and, if there is an appeal from a judgment based on the finding of the judge in such a case, the question for this court is whether as matter of law the finding was warranted.

It here was *said* that, when an action by a creditor against the administrator of the estate of a deceased debtor is pending and is about to result in a judgment in favor of the creditor and there is a doubt whether the estate of the deceased debtor is solvent or insolvent, the administrator at that time, before the judgment is obtained, should represent the estate to be insolvent, if he has not done so already.

Where two actions against the surety on an administrator's bond, each brought by a separate judgment creditor under R. L. c. 149, § 20, had been tried together,

it was *said*, that, although each of the creditors under the circumstances that existed had a right to put the bond in suit, it was plain that the surety was not subject to have two judgments entered against him, each for the penal sum of the bond, and that *it would seem* that both actions might be prosecuted until judgment was recovered in one of them and that then the fact that judgment had been recovered in that action would be a bar to entering judgment in the other, but that *whether* this was the proper way to preserve and give effect to the rights of all the parties it was not necessary to decide at the present time.

LORING, J.   Horace W. C. Sweet died testate some time before November 29, 1909, at a date not stated in the record.   On November 29, 1909, John L. Sweet was appointed administrator with the will annexed of Horace W. C. Sweet's estate and gave a bond in statutory form with the defendant surety company as surety.   "Within three months thereafter" he gave notice of his appointment.   "Thereafter" (at a date not stated in the record), he filed an inventory "showing personal property to the value of $1,290.29, and real estate to the value of $3,000, subject to a mortgage of $1,700."

On the first Monday of January, 1912, the Porter Livery Company recovered judgment against John L. Sweet as administrator as aforesaid, in the sum of $1,279.65 with costs to the amount of $11.63.   On May 6, 1912, the National Casket Company recovered a similar judgment against him in the sum of $1,324.44.

Executions were issued on both of the judgments.   On January 5, 1912, the Porter Livery Company caused demand to be made upon the administrator for payment of the execution, but he neglected and refused to pay the judgment or to show to the deputy sheriff sufficient goods or estate of the deceased to be taken on execution for that purpose.   At some time not stated in the record, the National Casket Company, after taking out execution on the judgment recovered by it, made due demand upon the administrator, but Sweet neglected or refused to pay that judgment or to show to the deputy sheriff sufficient goods or estate of the deceased to be taken on execution for that purpose.   Afterwards (on dates not stated in the record), the two actions now before us were brought on the same bond, one by each of the two judgment creditors.   John L. Sweet died on January 26, 1913, after the actions were brought.   Subsequently the plaintiffs discontinued against the principal defendant (John L. Sweet, administrator

as aforesaid). Since that time both of the actions have been prose-
cuted against the defendant surety company alone.

On April 21, 1913, the executors of the will of John L. Sweet
filed an account for him as administrator of Horace W. C. Sweet,
showing the exhaustion of the personal estate in the payment of
the aforesaid mortgage note and charges of administration. This
account was allowed by the Probate Court on the same day, with-
out notice to creditors by publication or otherwise. A petition by
these plaintiffs to reopen that account is now pending. On April
22, 1913, the estate of Horace W. C. Sweet was represented and
adjudged to be probably insolvent. The real estate has not yet
been sold.

The parties in each case agreed upon certain facts set forth in
a written agreement. Thereafter the cases were heard by a
judge * sitting without a jury. He made the following finding:
"From the statement of agreed facts I conclude and find that at
the date of the demand upon the administrator he had not in his
hands sufficient moneys of said estate to pay said judgment, the
personal estate having been theretofore properly and lawfully
expended by him, and that there was not, otherwise, any failure to
properly administer the estate." In addition he made a general
finding for the defendant in each case. On these findings judgment
was entered for the defendants and from those judgments the
plaintiffs took the appeals which are now before us.

The special finding of the judge below doubtless was based on
the following facts agreed to by the parties: "The said John L.
Sweet had been endeavoring to sell the real estate belonging to
his testator for a sufficient sum to pay, together with the personal
estate in his hands, all the debts of his testator lawfully due and
payable. The personal estate in his hands was insufficient for
this purpose and the market for the real estate was slow and
narrow. The real estate was worth enough, if sold at a fair price,
to ensure the payment of all debts of the testator."

The defendant surety company (in effect) has argued that the
case presented to the administrator with the will annexed was the
case of an estate where the personal property was sufficient to pay
off a mortgage on a parcel of real estate which, if sold at auction,

---

* *Quinn,* J.

would not be sufficient to pay the debts of the testator because the market for it "was slow and narrow," but which "if sold at a fair price," would realize enough to pay "all debts of the testator." Under these circumstances it was (or at least could be found by the judge to have been) the duty of the administrator to do what he did, namely, to endeavor to sell the real estate "at a fair price" and thus pay the testator's debts in full. That to do that he had to obtain a license to sell the real estate at private sale, and he could not obtain such a license until he had obtained a bid; R. L. c. 146, § 9; and that he had not been able to obtain a fair bid before he died although he had been endeavoring so to do; that under these circumstances the special finding of the judge, if not required by the facts agreed upon, was at least warranted by them.

We pass by the objection that the finding is based on facts submitted to the Superior Court at the trial of the action brought for breach of the probate bond in place of on the facts shown by the settlement of the administrator's accounts in the Probate Court. The finding is open to that objection. But that is not the objection to it which is decisive.

The decisive objection is that where the estate has not been represented insolvent there is *prima facie* a breach of the second condition * of an executor's or administrator's bond when on demand being made he neglects to pay an execution issued on a judgment against him in his official capacity or to show sufficient goods or estate of the deceased to satisfy it.

Whether there is a breach of the executor's or administrator's bond under these circumstances depends upon the construction to be given to R. L. c. 149, § 20.† Interpreted literally the pro-

---

* The second condition of the bond of an administrator with the will annexed, as prescribed by R. L. c. 149, § 1, cl. 1, is as follows: "Second, To administer according to law and to the will of the testator all personal property of the testator which may come into his possession or into the possession of any person for him, and also the proceeds of any of the real property of the testator which may be sold or mortgaged by him."

† R. L. c. 149, § 20, is in these words: "Section 20. Bonds given by executors or administrators for the performance of their trust may be put in suit by a creditor of the deceased for his own benefit, when such creditor has recovered judgment for his debt against the executors or administrators and they have neglected upon demand made by him to pay the same or to

visions of that section are satisfied by construing it to give the judgment creditor a right to put the bond in suit without obtaining the authority of the Probate Court to take that action. But taken in connection with the scheme of the proper winding up of the estate of a deceased person as a whole and in connection with the sections following it, we are of opinion that by the true import of this section the failure under the circumstances stated in R. L. c. 149, § 20, to pay or to exhibit sufficient goods or estate of the deceased *prima facie* is a breach of the second condition of the executor's or administrator's bond in case of an estate which has not been represented insolvent.

By R. L. c. 141, § 1, no action can be brought by a general creditor of the estate against an executor or administrator until after the expiration of one year from his giving bond for the performance of his trust. And by § 2 of the same chapter, on the expiration of that year the executor or administrator (who has given due notice of his appointment) can pay all debts of which he has had notice provided that, based upon the demands of which he has had notice, the estate is not insolvent. After the expiration of two years no action can be brought against the estate provided the executor or administrator gave due notice of his appointment. R. L. c. 141, § 9. If during the intervening year a creditor for the first time presents his claim he is entitled to be paid out of the surplus funds left 'in the hands of the executor or administrator, if there be any. By R. L. c. 142, § 2, * it is (in effect) made the duty of an executor or administrator to represent the estate insolvent if it appears that the estate is insufficient to pay all debts of which he has had notice, in order that the estate may be ratably distributed among the creditors.

The effect of these provisions is: (First) to make debts owed by the testator or intestate due one year after an executor or adminis-

show sufficient goods or estate of the deceased to be taken on execution for that purpose."

* R. L. c. 142, § 2, is as follows:

"If the Probate Court finds from the representation of an executor or administrator that the estate of the deceased will probably be insufficient for the payment of his debts, it may appoint two or more commissioners to receive and examine all claims of creditors against such estate, and to return a list of all claims presented to them, with the amount allowed on each claim."

trator has given bond for the performance of his trust. The executor or administrator has a year in which to find out whether the estate is solvent, and for that reason no action can be brought against him until the year has expired. The second effect of these provisions is that in case of an estate which has not been represented to be insolvent it is the duty of the executor or administrator to reduce the estate into cash by the end of the year at least so far as may be necessary to pay the debts due from the deceased. At the end of the year a creditor not only can bring suit if the claim due him from the deceased is not paid, but before the enactment of St. 1907, c. 553, he could have secured payment of the judgment (when recovered) by attaching on mesne process any goods or estate of the deceased which he could lay hands upon, and he still can satisfy the judgment recovered by him out of any goods or estate of the deceased which he can find. This right is given by R. L. c. 172, § 5. See for example *Gore* v. *Brazier*, 3 Mass. 523; *Cooke* v. *Gibbs*, 3 Mass. 193, 197; *Harmon* v. *Osgood*, 151 Mass. 501. The right originally given to the creditor to attach the goods or estate of the deceased on mesne process and the right which he still has to take them on execution were given not to afford him an opportunity to get priority over other creditors of the deceased. It was not and is not intended that one creditor of a deceased person should obtain a preference over his other creditors. But the right of attachment on mesne process which existed before St. 1907, c. 553, and the right of levying execution on any goods or estate of the deceased (which still exists) were given to the deceased's creditors because (when the estate has not been represented to be insolvent and the year given to the executor or administrator in which to turn the assets into cash has expired) all creditors are under the circumstances entitled to be paid and to have the cash forthcoming with which the payment is to be made. The substance of these considerations is not affected by the substitution of a right of attachment in the discretion of the judge of the Probate Court for the absolute right of attachment that existed before St. 1907, c. 553.

It is in the light of all these conditions that R. L. c. 149, § 20, is to be construed. The fair import of the provisions of that section, construed in the light of these conditions, is that an executor or

administrator of an estate which has not been represented insolvent who does his duty will pay on demand an execution issued on a judgment recovered against him in his official capacity, or will "show sufficient goods or estate of the deceased to be taken on execution for that purpose." In other words that the failure to do at least one or the other of these two things is a breach of his duty and so of his official bond, and that the creditor can thereupon as of right put his bond in suit without obtaining the authority of the Probate Court to take that action.

This conclusion is reinforced by the wording of § 23 and the provisions of §§ 21 and 22 taken in connection with § 20 and § 23. Section 23 provides that the Probate Court may authorize the executor's or administrator's bond to be put in suit if it "finds that the executor or administrator has failed in any manner not specified in the three preceding sections to perform the conditions of his bond." * This is a plain implication that in case of the three preceding sections there is a failure to perform the conditions of the bond. And this implication (that there is a breach of the probate bond in the cases described in R. L. c. 149, §§ 20–23) was intended by those who first drafted the statutory provision which is now R. L. c. 149, § 23. That section was drafted by the Commissioners of the Revised Statutes. In a note to Rev. Sts. c. 70, § 3 (now R. L. c. 149, § 20), it is said: "When a creditor has recovered judgment for his debt, there is no longer any question of the liability of the executor or administrator to pay the amount, and of course if it is not paid, the creditor is allowed, by the 3rd section to put the bond immediately in suit, without any previous authority or order from the judge of probate. This will not prevent his proceeding against the executor or administrator for waste, if he should prefer that remedy; but a suit on the bond will in general be determined as expeditiously as a suit on a suggestion of waste; and it will be more effectual, as furnishing a resort at once to the sureties, as well as to the executor or administrator."

---

* R. L. c. 149, § 23, is in these words: "Section 23. If the Probate Court, upon the representation of any person interested in an estate, finds that the executor or administrator has failed in any manner not specified in the three preceding sections to perform the conditions of his bond, it may authorize any creditor, next of kin, legatee or other person aggrieved by such maladministration to bring an action on the bond."

In addition to the implication which comes from the wording of § 23 there is the fact that by the provisions of § 23 a case covered by § 20 is put on the same footing as cases covered by §§ 21, 22. And in case of §§ 21 and 22 there is confessedly a breach of the conditions of the bond.*

The conclusion that by its true construction R. L. c. 149, § 20, imports that a failure on the part of an executor or administrator of an estate not declared insolvent to pay or exhibit sufficient goods or estate of the deceased is a breach of his official bond is confirmed by the rights given to a legatee. If at the end of the year an executor has not paid a legacy he can be sued in contract for it (R. L. c. 141, § 19) and is personally liable (at least on the legatee's showing that the testator left assets) unless the executor goes forward and shows that he has exhausted the assets in paying persons who had claims on the estate superior to those of the legatee. *Fitch* v. *Randall*, 163 Mass. 381. It would be an anomaly to make the executor personally liable to a legatee at the end of the year (unless he showed in a proper way an exhaustion of assets) and not to make him personally liable to a creditor of the deceased who had established the debt due him by a judgment against the executor or administrator in his official capacity, had taken out execution and had failed to get satisfaction of it.

It always has been the rule that before a creditor of the deceased has recovered judgment against the estate the executor or administrator could represent the estate to be insolvent and by pursuing the matter with due diligence (as to which see *McKim* v. *Roosa*, 183 Mass. 510) could prevent the action from ripening into a judgment. In *Newcomb* v. *Goss*, 1 Met. 333, it was held that the last opportunity for representing the estate to be insolvent was before judgment was recovered against the executor or administrator sued in their official capacity, and that a representa-

---

* R. L. c. 149, §§ 21 and 22 are in these words:

"Section 21. A creditor of an estate which has been represented insolvent may bring such action if the amount due to him has been ascertained by the decree of distribution, and the executor or administrator neglects upon demand to pay such amount.

"Section 22. Such action may be brought by a person who is next of kin to recover his share of the personal property after a decree of the Probate Court ascertaining the amount due to him, if the executor or administrator neglects upon demand to pay such amount."

tion of insolvency could not be made in an action on the bond brought under what is now R. L. c. 149, § 20. That case was overruled in *Fuller* v. *Connelly,* 142 Mass. 227, and that was confirmed in *McKim* v. *Roosa, ubi supra.* In the former of these two cases it was held that the liability of an executor or administrator on his official bond was not greater than it was on *scire facias* brought under what is now R. L. c. 172, § 8, to charge an executor or administrator with waste. And it being established that in *scire facias* against an executor or administrator the estate could be represented insolvent and the defence consequent upon that made out (if it could be made out), the same could be done in an action brought under what is now R. L. c. 149, § 20, on the official bond of the executor or administrator. The defence set up in *Fuller* v. *Connelly, ubi supra,* was the statutory equivalent of the defence (which is initiated by a representation of insolvency) set forth in what is now R. L. c. 141, § 5.*

There are expressions in *Fuller* v. *Connelly, ubi supra,* 229, 230, from which it might be thought that the only effect of R. L. c. 149, § 20, was to authorize a creditor to put the probate bond in suit (under the circumstances there described), and that the failure to pay or to show sufficient goods or estate to satisfy an execution duly taken out by a judgment creditor was not of itself a breach of the probate bond on which the executor or administrator and their sureties are liable. It well may be doubted whether the expressions in *Fuller* v. *Connelly,* just referred to, ought to be taken to go so far as is intimated above. In this connection it is of importance that "The only breach alleged [in *Fuller* v. *Connelly*] is that the plaintiff recovered judgment against the administratrix, which she refused to pay upon demand" (see page 227); and by reference to the original papers the question reported to the full court was that raised by the pleadings and the agreed facts. However that may be, Chief

---

* R. L. c. 141, § 5, is in these words: "If it appears, upon the settlement of the account of an executor or administrator in the Probate Court, that the whole estate and effects which have come to his hands have been exhausted in paying the charges of administration and debts or claims entitled by law to a preference over the common creditors of the deceased, such settlement shall be a bar to an action brought against him by a creditor who is not entitled to such preference, although the estate has not been represented insolvent."

Justice Knowlton, in delivering the opinion of this court in *McIntire* v. *Cottrell,* 185 Mass. 178, 180, thought that there was a breach of the bond in such a case. He said: "The stipulation in the bond which applies to this case is that the administrator shall administer according to law all the personal estate of the deceased which shall come to his possession, etc. This implies that he shall pay the debts if he has assets. But there is no violation of this stipulation as to any debt, until it has been established by a judgment, and the administrator has failed to pay the judgment on demand. Pub. Sts. c. 143, § 10. (R. L. c. 149, § 20.) . . . Even then the administrator and the sureties may defend successfully by showing that the assets have been used according to law. *Fuller* v. *Connelly,* 142 Mass. 227. The demand upon the administrator after judgment is not merely a preliminary, which stands instead of an authorization by the Probate Court to bring a suit upon a previously existing debt, but it is an essential to the creation of the debt itself upon the bond. Until the demand is made, it cannot be known that the administrator will not pay the judgment. The liability on the bond is contingent upon his failure to pay on demand."

We are of opinion that a failure to pay an execution issued, on a judgment obtained against an executor or administrator in his official capacity, or to show sufficient goods or estate of the deceased to satisfy it, is a breach of the executor's or administrator's bond, and that unless the affirmative defence which is initiated by a representation of insolvency or its statutory equivalent set forth in R. L. c. 141, § 5 (both of which, under the decision in *Fuller* v. *Connelly,* may be initiated pending the action on the bond), is made out they and their sureties are liable.

In the case at bar the breach alleged is the failure to pay or to show sufficient goods or estate under the circumstances set forth in R. L. c. 149, § 20, as was the case in *Fuller* v. *Connelly, ubi supra.* On the facts agreed upon under which the parties went to trial that allegation was proved.

However, the estate now has been represented insolvent and an adjudication of probable insolvency has been made. But that does not make out an affirmative defence. To make out an affirmative defence based on a representation of insolvency it must appear by a final adjudication that the estate is insolvent. After

a representation of insolvency is made, the executor or adminis-trator and their sureties are entitled to have the case continued until the result of the representation of insolvency is ascertained. These several propositions were decided in *McKim* v. *Roosa,* 183 Mass. 510, and in *Fuller* v. *Dupont,* 183 Mass. 596.

The two cases now before us were not cases stated. Nor were they cases submitted on agreed facts with a right to draw inferences of fact. They were cases in which the parties had pleaded to an issue of fact and after having done that they agreed upon the facts upon which that issue of fact was to be decided in place of proving those facts by evidence. Under these cir-cumstances there is no submission of the case to the court on agreed facts, but the facts on which the case is to be tried under the pleadings are agreed upon. We are of opinion however that the rule established in *Ingalls* v. *Hobbs,* 156 Mass. 348, *Harvard Brewing Co.* v. *Pratt,* 185 Mass. 406, and *Webber* v. *Cambridge-port Savings Bank,* 186 Mass. 314, should be extended to such a case, and that an appeal taken from a judgment on a finding made in such a case raises the question whether as matter of law the finding was warranted.

Although it was decided in *Fuller* v. *Connelly, ubi supra,* that the defence which arises out of a representation of insolvency, when pursued with due diligence to its termination, can be set up in an action on a bond brought by a judgment creditor under R. L. c. 149, § 20, yet it ought not to be inferred that that is the proper time for making a representation of insolvency. If at the time that a litigated claim against the estate is about to result in a judgment in favor of the creditor there is doubt (arising either from uncertainty as to the amount to be realized by a sale of the assets or as to the claims which will be ultimately estab-lished against the estate) as to the solvency or insolvency of the estate, the proper time to represent the estate to be insolvent (if it has not theretofore been represented insolvent) is before that claim passes into judgment. It is now provided by R. L. c. 142, § 32, that execution shall not issue on judgments obtained before a representation of insolvency is made and a certified copy from the Probate Court showing the representation of insolvency has been filed in the clerk's office of the court in which the judg-ment was rendered. But unless that is done (as we have said

before) the judgment creditor can levy under his execution upon any goods or estate belonging to the executor or the intestate under R. L. c. 172, § 5. See *Harmon* v. *Osgood,* 151 Mass. 501; *Gore* v. *Brazier,* 3 Mass. 523; *Look* v. *Luce,* 136 Mass. 249. For example, before the representation of insolvency was made in the cases at bar, either one of the plaintiffs in these two actions could have levied upon the real estate which the administrator preserved by paying off the mortgage upon it. If it had done so and that real estate had not produced enough to pay both judgments, without question the administrator and his sureties would have been liable on his probate bond.

There is one matter that ought to be noticed to prevent a misapprehension. The two actions now before us are brought upon the same bond. The statute (R. L. c. 149, § 20) gives a creditor in the position in which the two creditors in the two actions now before us were, a right to put the bond in suit under the circumstances which existed. Of course the defendant surety company is not subject to two judgments against it each for the penal sum of the bond. It would seem that both actions might be prosecuted until judgment was recovered in one and that the fact that judgment had been recovered in one would be a bar to entering judgment in the other. But whether this is the proper way of working out the rights of the parties it is not necessary now to decide.

The result is that the judgments must be reversed and the cases must stand to await proceedings in the Probate Court, founded upon the representation of insolvency made by the administrator *de bonis non.* It is

*So ordered.*

*F. M. Copeland,* for the plaintiff in the first case.

*M. S. Case,* for the plaintiff in the second case, submitted a brief.

*H. R. Bygrave,* for the defendant the Title Guaranty and Surety Company.