[Civ. No. 9697. Second Appellate District, Division One.—April 3, 1936.]

L. BOTELER, Trustee in Bankruptcy, etc., Plaintiff and Appellant, v. JACK CONWAY, Respondent; CADWAL-LADER-GIBSON CO., INC. (a Corporation), Intervener and Appellant.

Loton Wells and Hubert Laugharn for Plaintiff and Appellant.

Bauer, MacDonald, Schultheis & Pettit, Robert H. Edwards, Jr., and Roger B. Smith for Intervener and Appellant.

D. Chase Rich for Respondent.

SHINN, J., *pro tem.*—Appeal by plaintiff and intervener from a judgment in favor of defendant upon a written guaranty.

Plaintiff sues as trustee of the Estate of Lloyd Products, Inc., a corporation, bankrupt, upon a contract of guaranty executed by defendant Jack Conway and upon stockholders' liability. Intervener Cadwallader-Gibson Co., Inc., a corporation, is interested in the matter in suit by reason of an assignment of plaintiff's claim to secure an indebtedness to intervener. Lloyd Products, Inc., hereinafter designated as Lloyd, contracted in writing with Monarch Radio Co., Ltd., hereinafter referred to as Monarch, to manufacture and sell to the latter, which agreed to buy, certain radio cabinets at stated prices. The contract provided that 10,000 cabinets were to be made and delivered within a year after the date of the contract, August 29, 1929. Monarch agreed to buy all of its cabinet requirements for one year from Lloyd and was to pay for cabinets according to the design agreed upon, at the rate of $14.50 each. On September 9, 1929, before any cabinets were delivered, the secretary of Monarch and the president of Lloyd, without the knowledge or consent of defendant Conway, made certain written changes in the contract, by which the period of time for the manufacture of 10,000 cabinets was reduced from one year to eight months and the time during which Monarch was to purchase all of its cabinet requirements was reduced from one year to about eight months. The guaranty of Conway upon which suit was brought was executed on the same day as the contract between the corporations and read as follows: "I, Jack Conway, in consideration of the execution of and the performance of the conditions of said contract by said first party, do hereby personally guarantee all of the payments in this contract specified on the part of the second party to be paid; at the times, of

the amounts and in the manner in said contract provided. This guarantee to remain in full force and effect in the event of the transfer or assignment of the interest or rights of either party under said contract. (Signed) Jack Conway. Witness: C. B. Flowers; Dated: August 29th, 1929.''

The court found that the two corporations changed the contract in material respects, as we have stated; that there were delivered altogether 849 cabinets of the type specified in the contract at a total price of $12,310.10; that Monarch gave its trade acceptances in the sum of $7,250, which were negotiated by Lloyd and are not sued on here. Delivery was tendered of an additional 151 cabinets of this type and was refused; 250 of a different type which the parties had agreed upon were ordered and partly constructed. Other facts were found to the effect that Lloyd was damaged in certain amounts by reason of certain work and material which had gone into the partial construction of cabinets under the mentioned orders and for the loss of certain profits which would have been earned had the contract been performed by the acceptance of the cabinets.

Defendant Conway relied in part upon the modifications of the terms of the contract without his consent as a release from his contract of guaranty, and the court held that he was thereby released. The obligation under the contract of guaranty was to make the payments specified in the contract in case Monarch did not make them, and if effect be given to the modifications of the contract, Monarch and its guarantor would have been obliged to pay in eight months' time what they had agreed would be paid in a year, and both corporations would have been released from the obligation under which Monarch was to purchase from Lloyd all of its cabinet requirements during the last four months of the year.

Where a contract and a guaranty of performance thereunder are entered into at the same time, they are properly read and interpreted as an entire contract. Where the main contract is altered without the consent of the guarantor and in respects so material as to change the substantial rights of the parties thereto and in effect to make a new contract, the guarantor is exonerated. (Sec. 2819, Civ. Code.) This is true whether the effect of the alteration is to increase or to lessen the obligation, performance of which is guaranteed. (*Driscoll* v. *Winters*, 122 Cal. 65 [54 Pac. 387]; *McMannus* v.

*Temple Estate Co.*, 10 Cal. App. (2d) 419 [51 Pac. (2d) 1124].) The modifications were clearly sufficient to exonerate the guarantor.

 Plaintiff cannot be heard to say that the secretary of Monarch did not have authority to make the changes in the contract. One who contracts with an agent or officer of, and acting for, a corporation generally cannot question his authority to bind the corporation. (14A Cor. Jur. 120.) This is a general rule of agency. (2 Cor. Jur. 467.) If an agent exceeds his authority his principal may complain but a third person may not. Monarch had the right to affirm or repudiate the acts of its secretary. It did not disaffirm them and plaintiff may not take unto himself the right to do so. The rule is especially applicable here, where the parties acted under the contract as modified without questioning the secretary's authority.

There remains the question of the liability of Conway as a stockholder of Monarch. The court found that on the date of the contract he owned one-third of the *issued* and *outstanding* stock of the corporation. This finding is not challenged. Monarch Radio Co., Ltd., is a Nevada corporation. Article XII, section 3, of the Constitution was amended in 1928 so as to exempt from constitutional liability for corporate debts stockholders of any corporation organized under the laws of this state using the word ''Limited'' (or its abbreviation) in its corporate name. The legislature was given power to provide a stockholder's liability for such corporations. In 1931 the legislature adopted section 322a of the Civil Code, which purported to exempt foreign as well as domestic corporations so using the word ''Limited''.

The section was ineffectual as to foreign corporations because the legislature did not have power to remove a liability which still existed under the Constitution. But defendant Conway contends that as a stockholder of a foreign corporation using the word ''Limited'' in its name and qualified to do business in California, he is entitled under the Fourteenth Amendment of the Constitution of the United States to the same privileges as a stockholder of a domestic corporation using the word ''Limited'' in its name, that is to say, in this case, exemption from stockholders' liability. The argument commences with the erroneous supposition that a foreign corporation has a constitutional right to enter a state other

than that of its origin and to do business therein upon as favorable terms as corporations organized in such state. The argument finds no support in the authorities, which all deny the existence of such claimed constitutional rights.

With certain well-understood exceptions, a state may refuse to allow foreign corporations to enter the state for the transaction of business, and may admit them upon terms and require them to comply with state laws. ██ It has been said many times that the power to exclude, where it exists, is absolute and unlimited and that the will of the admitting state may be expressed by imposing conditions which discriminate in favor of domestic corporations, or which are even prohibitive. A foreign corporation may not enter the state upon terms and then complain of the terms. (*H. K. Mulford Co.* v. *Curry,* 163 Cal. 276 [125 Pac. 236]; *Black* v. *Vermont Marble Co.,* 1 Cal. App. 718 [82 Pac. 1060]; *Jameson* v. *Simonds Saw Co.,* 2 Cal. App. 582 [84 Pac. 289]; *Franscioni* v. *Soledad Land & Water Co.,* 170 Cal. 221 [149 Pac. 161]; *San Francisco* v. *Liverpool etc. Ins. Co.,* 74 Cal. 113 [15 Pac. 380, 5 Am. St. Rep. 425]; *Paul* v. *Commonwealth of Virginia,* 8 Wall. (75 U. S.) 168 [19 L. Ed. 357]; *Pembina Cons. Silver Min. etc. Co.* v. *Commonwealth of Pennsylvania,* 125 U. S. 181 [8 Sup. Ct. 737, 31 L. Ed. 650]; *Ducat* v. *City of Chicago,* 10 Wall. (77 U. S.) 410 [19 L. Ed. 972]; *Bank of Augusta* v. *Earle,* 13 Pet. (38 U. S.) 519 [10 L. Ed. 274]; *Massachusetts Bonding & Ins. Co.* v. *Chorn,* 274 Mo. 15 [201 S. W. 1122]; *London Paris & American Bank* v. *Aronstein,* 117 Fed. 601; *Hooper* v. *State of California,* 155 U. S. 648 [15 Sup. Ct. 207, 39 L. Ed. 297]; *Williams* v. *Gaylord,* 102 Fed. 372; 14A Cor. Jur. 1244.)

██ Monarch was not an instrumentality of the federal government nor was it engaged in interstate commerce, and therefore it had no unconditional right to do business in California. The Constitution and laws of California allowed foreign corporations to enter the state upon the condition that there should be a liability upon their stockholders for the debts they might create in this state. Therefore, when Monarch entered the state, as its articles of incorporation gave it the right to do, it subjected its stockholders to the liabilities prescribed by the Constitution and laws of this state and defendant Conway was liable for his proportionate share of the debt of Monarch to plaintiff. (*Provident Gold Min. Co.*

v. *Haynes,* 173 Cal. 44 [159 Pac. 155] ; *Pinney* v. *Nelson,* 183 U. S. 144 [22 Sup. Ct. 52, 46 L. Ed. 125].)

 The findings, while stating that Conway was the owner of one-third of the *issued* and *outstanding* stock of Monarch, do not show the total amount of the *subscribed* stock of Monarch nor the proportion of the *subscribed* stock owned by defendant Conway, which proportion determines the extent of his liability. The allegation of the complaint as to the proportion of the subscribed stock subscribed for by Conway or issued to him was found to be untrue. The findings in other respects are not sufficient to enable this court to direct the entry of judgment upon a reversal.

The judgment is reversed for a retrial of the question of the liability of defendant Conway as a stockholder.

Houser, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 24, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 1, 1936.