ROSEMIA APOSTOLON COUNELIS, administratrix, *vs.* PHILIP COUNELIS & others
(and a companion case [1]).

Plymouth.  November 6, 1941. — March 28, 1944.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Executor and Administrator*, Bond, Accounts, Payment of claims.  *Surety*.

An administrator should be credited in his account with a payment made by the surety on his bond at his request and in his presence in satisfaction of a decree against them in a suit on the bond by a preferred judgment creditor.

A judge of probate should have allowed a motion by an administrator, presented at a hearing on his final account, to amend that account by crediting himself with the amount of a preferred claim which the surety on his bond had properly paid in his behalf, and should have allowed such additional credit; and, it appearing that by the allowance thereof the account would show that the assets of the estate had been exhausted by the payment of that claim and other preferred claims, a suit by a common judgment creditor on the bond should have been dismissed under G. L. (Ter. Ed.) c. 197, § 5, irrespective of pending insolvency proceedings.

PETITION, filed in the Probate Court for the county of Plymouth on September 25, 1939, for the allowance of the

---

[1] The companion case was by Charles Andreson against Rosemia A. Counelis and Maryland Casualty Company.

second and final account of the administratrix of the estate of Charles M. Counelis, late of Brockton; also a

PETITION, filed in the same court on May 19, 1938, by a common judgment creditor of the estate for establishment of his claim against the administratrix and the surety on her bond.

*H. B. White*, for Rosemia Apostolon Counelis and another.

*G. L. Wainwright*, (*G. L. Cohen* with him,) for Charles Andreson.

DOLAN, J. These two cases involving the estate of Charles M. Counelis, deceased, come before us upon the appeals of the administratrix of the estate and the surety on her bond as such from decrees entered in the Probate Court. The first case arose upon the second and final account of the administratrix. The second case arose upon the petition of Charles Andreson, a judgment creditor of the estate, against the administratrix and the Maryland Casualty Company, the surety on her bond, seeking to enforce its obligations against each of the respondents in satisfaction of his judgment. The cases were heard together by the judge on November 6 and 8, 1939. On November 8, 1939, the accountant and the surety company filed motions to amend the account in question by adding thereto the following items:

| | | |
|---|---|---|
| "13. 11- 9-38. | Payment to Norman W. Sampson and Kenneth E. Sampson for undertakers' services . . . . . . . | $2422.41 |
| 14. 12-29-38. | Payment to Clarence A. McLaughlin, Jr. and Elmer H. Fletcher, Commissioners in Insolvency — fees as Commissioners in Insolvency . . . . . . | $250.00." |

On November 28, 1939, these motions were denied and the accountant and the surety company appealed. See *Murray v. Massachusetts Bonding & Ins. Co.* 283 Mass. 15, 16–17. On that day the judge entered a decree amending the account in other respects and allowing it as amended, disallowing in part or in whole items to the amount of $847.07, and charging the accountant with a balance of $992.07. (That balance should have been $847.07.) The accountant and the surety company appealed. On the same day the judge

also entered a decree on the petition of Andreson establishing his debt against the administratrix and the surety on her bond in the sum of $5,252.61, "being the amount of the petitioner's judgment and interest thereon to the date of this decree," and ordering each of the respondents to pay the petitioner that sum within thirty days from the date of the decree and that, in the event that payment was not so made, execution should issue. The respondent administratrix and the surety company appealed from that decree.

The evidence is reported and the judge made a voluntary finding of certain material facts. Thereafter the surety filed a request for findings of fact, which was denied except with relation to the presentation "at the hearing on the . . . account and in connection with the suit on the bond" of the motions, hereinbefore referred to, to amend the account to include the amount paid by the surety to the undertakers and to the commissioners in insolvency on behalf of the administratrix. The surety appealed from the disallowance by the judge of certain requests for findings of fact. There was no error in this respect, since the judge could not be required to find particular facts. *Berman* v. *Coakley,* 257 Mass. 159, 162.

The evidence being reported, it is our duty under the familiar rule to examine the evidence and to decide the cases according to our own judgment, giving due weight to the findings of the trial judge which will not be reversed unless plainly wrong. Material facts found by the judge and those we find ourselves (see *Lowell Bar Association* v. *Loeb, ante,* 176, 178, and cases cited) may be summed up as follows: The administratrix was appointed and qualified on March 11, 1935, by giving bond with the respondent surety company as surety (hereinafter referred to as the surety) in the sum of $10,000. She filed an inventory showing assets of uncertain value. The petitioner in the suit on the bond, hereinafter referred to as Andreson, obtained a judgment against her on February 11, 1936, and execution issued on April 2, 1936, for $4,841. His claim against the estate of the deceased was not a preferred one. On March 9, 1936, the administratrix filed a representation of insolvency

in the Probate Court, but it was not until February 8, 1938, that a decree of probable insolvency was entered thereon and commissioners were appointed to examine claims.   On that day a decree had been entered against the administratrix and the surety in a suit on the bond by Sampson and Sampson, who had a judgment ($2,178.91) and execution based upon a debt for the expenses of the funeral of the deceased, and on November 9, 1938, the surety paid $2,422.41 in satisfaction of that decree in behalf of and in the presence of the administratrix.   "The surety . . . has also paid $250 to the commissioners in insolvency as their fees." The commissioners in insolvency filed their report on October 17, 1938, but no action has been taken by the Probate Court thereon.   The claims of common creditors allowed by the commissioners amount to $3,710.10.   Andreson's judgment was not presented to the commissioners for allowance and is not dealt with in their report.   In their report, however, the commissioners stated that the claim of the undertakers for funeral expenses had been presented to them, that it had been reduced to a judgment and that if they had jurisdiction over it they allowed it for the full amount of $2,178.91. In the course of the trial of the cases the judge "rule[d]" that this judgment stood as it was "a judgment against the estate."   That was correct.   In such case the execution "runs against the 'goods and estate' of the deceased in the hands of the administrator."   *Breen* v. *Burns,* 280 Mass. 222, 225, and cases cited.   On March 28, 1938, the restated first account of the administratrix had been allowed.   In that account she was credited with a payment of $500 recovered by Andreson in part satisfaction of his execution. It is to be observed that this was allowed forty-eight days after the commissioners in insolvency had been appointed. The administratrix and the surety conceded that items amounting in all to $735.25 were allowed although paid to common creditors.   All other payments in that account appear to have been to preferred creditors.   For the purposes of the present cases, since the result will be the same, we treat these payments as though they had not been allowed.   In the restated first account the administratrix

charged herself with $5,814.51. The items allowed in schedule B amounted to $3,865.39. The balance shown in the hands of the accountant was $1,949.12, and the effect of the decree was to charge her with that balance. The judge found that on July 19, 1938, on motion of the surety it was ordered that the suit on the bond be continued generally, but that this order was revoked on May 16, 1939; that the respondent administratrix went to trial on the petition "and did not ask the court to order any further continuance of the suit," and that he "did not consider that . . . [his] discretion should be exercised, of . . . [his] own motion, to order such continuance." The record, however, discloses that the respondent surety in answering to the suit on the bond specifically prayed that it be continued to await the outcome of the insolvency proceedings, and that the respondent administratrix in answering directed specific attention to the pendency of the insolvency proceedings in which commissioners had already been appointed to examine claims. The judge also found that, at the hearing on the account and in connection with the suit in equity, the motions to amend the account, to which we have already referred, were presented to him, and that the items sought to be added had been actually paid by the surety on behalf of the administratrix. The decree in the suit on the bond by the undertakers as before noted had been entered by the judge on February 8, 1938, and by its terms the administratrix was ordered to pay to the undertakers $2,299.46 together with costs of $33.52. That decree is contained in the record and was adverted to by the judge in the ruling made by him to which we have already referred. An examination of the items of the restated first account and of the second account as allowed by the judge discloses that, even eliminating therefrom items that do not appear to have been preferred, had the judge allowed the motions of the administratrix and the surety to amend the second account by adding to schedule B the item paid to the undertakers for expenses of the funeral of the deceased in satisfaction of the decree entered in the Probate Court in their suit on the bond of the administratrix, and allowed that item, the entire estate of the

deceased would have been shown to have been exhausted in the payment of charges of administration and claims entitled by law to a preference over the common creditors of the deceased. Under G. L. (Ter. Ed.) c. 198, § 1, the expenses of the funeral and last sickness of the deceased and the charges of administration have priority over all other claims against the estate of the deceased. *Hayes* v. *Gill*, 226 Mass. 388, 390. *Breen* v. *Burns*, 280 Mass. 222, 226. *Eastman* v. *Allen*, 308 Mass. 138, 140. *White* v. *Cormier*, 311 Mass. 537, 540. And by G. L. (Ter. Ed.) c. 197, § 5, it is provided as follows: "If it appears, upon the settlement of the account of an executor or administrator in the probate court, that the whole estate and effects which have come to his hands have been exhausted in paying the charges of administration and debts or claims entitled by law to a preference over the common creditors of the deceased, such settlement shall be a bar to an action brought against him by a creditor who is not entitled to such preference, although the estate has not been represented insolvent."

The fact that the surety in the instant cases paid the items which the judge in effect refused to allow in the second account makes no difference. These payments were made by the surety in behalf of the administratrix, that to the undertakers having been made at her request and in her presence. They were items that would not, as against other creditors, be affected by the insolvency of the estate. And where "a principal makes default in the payment of a debt or the performance of the contract, the surety need not wait for suit to be brought [as was, however, done here], but may, as soon as the liability arises, pay and discharge the debt. It is not necessary to obtain leave of the principal; the law implies a request to the surety to do this in behalf of his principal." *Hazelton* v. *Valentine*, 113 Mass. 472, 479. In the instant cases the judgment rendered against the principal was conclusive evidence of the debt thereby ascertained against both her and her surety. See *Way* v. *Lewis*, 115 Mass. 26; *Cutter* v. *Evans*, 115 Mass. 27. The affirmative defence of the exhaustion of the estate in payment of preferred claims as well as that of the pendency

of insolvency proceedings, in which probable insolvency has been decreed and commissioners to examine claims have been appointed, may be initiated pending the suit on the bond and before decision thereon. *Harmon* v. *Sweet,* 221 Mass. 587, 597. That was done in the suit on the bond in the present case and the finding of the judge that the administratrix did not prosecute the representation of insolvency diligently cannot serve to deprive the respondents of the defences urged after decree on that representation.

In the present cases the decrees denying motions to amend the account, the decree entered on the account without the items of preferred claims sought to be added thereto and allowed, and the decree on the petition to enforce the obligations of the bond were apparently entered simultaneously. Had the motions in question been granted and the items allowed, it would have been shown that the entire estate had been exhausted in payment of preferred claims, and thus the administratrix and the surety would have established a valid defence to the suit on the bond under G. L. (Ter. Ed.) c. 197, § 5. Had the motions been allowed to the extent alone of the judgment obtained against the administratrix ($2,178.91) for the funeral expenses of the deceased, which the administratrix and the surety had previously been ordered to pay by the court below in a suit on the bond by that judgment creditor, and had that item been allowed, the result would have been the same. We are of opinion that the motions in question should have been allowed to that extent at least, and that that item should have been allowed with the result that the petition to enforce the obligations of the bond of the administratrix should have been dismissed. It is unnecessary in view of what we have said above to consider further the effect of the pending insolvency proceedings in which commissioners had been appointed, and whose report had been filed and to whom the petitioner to enforce the obligations of the administratrix's bond had not presented his claim for allowance. See, however, G. L. (Ter. Ed.) c. 198, §§ 31, 32, 33; *Fuller* v. *Connelly,* 142 Mass. 227; *Harmon* v. *Sweet,* 221 Mass. 587, 596. The decrees entered in the court below

denying the motions to amend the account are reversed and instead a decree is to be entered allowing these motions to the extent of the judgment obtained by the undertakers for funeral expenses of the deceased. The decree allowing the second and final account is reversed and instead a decree is to be entered allowing in addition to the items in schedule B, which were allowed by the judge, the sum of $2,178.91, the amount of the judgment obtained by the undertakers and paid by the surety in behalf of the administratrix (disregarding interest and costs), making the total of schedule B $3,285.96, leaving no balance but a deficit of $1,331.84, less $735.25 actually paid to common creditors as before stated, or $596.59.

The decree entered in the court below upon the petition to enforce the obligation of the bond of the administratrix is reversed and instead a decree is to be entered dismissing the petition.

*Ordered accordingly.*