**H. E. ATTERBURY, Appellant,**

v.

**A. S. V. CARPENTER, Appellee.**

**No. 18403.**

United States Court of Appeals
Ninth Circuit.

Aug. 14, 1963.

Duncan, Brophy, Wilson & Duhaime and Robert B. Duncan, Medford, Or., for appellant.

Roberts, Kellington, Branchfield & Heffernan, G. W. Kellington and George M. Roberts, Medford, Or., for appellee.

Before ORR, JERTBERG and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

Appellant Atterbury pledged stock as security for a loan made to another. The borrower defaulted. Atterbury (with jurisdiction founded upon diversity of citizenship) has brought this action to restrain the pledgee from selling the stock. He contends that he has been discharged as surety because of changes made in the loan agreement without his consent. The district court held that Atterbury was an indemnitor and not a surety, and therefore was not entitled to be discharged. The basic question upon this appeal is whether the district court erred in that holding.

The borrower is the Southern Oregon Moulding Company, hereinafter called "Somco." In 1956, through past business dealings, Somco owed Atterbury $44,200, and Atterbury owed $60,000 to Wells Fargo Bank of San Francisco. Somco gave its note to Wells Fargo in the amount of $60,000, secured in part by a pledge of securities by Atterbury. By 1958, Wells Fargo was pressing for payment. Atterbury wished his stocks to be released from pledge and insisted that Somco pay off its $44,200 share of the bank obligation or be liquidated. Somco then got in touch with appellee

Carpenter who, it knew, had engaged in the business of corporate financing. Its obligations as a result were refinanced as follows:

$45,000 was borrowed by Somco from the United States National Bank of Portland, Oregon, at 4½% interest, with Carpenter endorsing the note and giving a pledge of securities. Wells Fargo was then paid off, Somco paying $44,200 of the principal plus all interest charges, and Atterbury paying the balance of principal. Atterbury's pledged securities were then released to him.

To compensate Carpenter for his risks and services as endorser and surety, it was agreed that he was to receive one quarter of one per cent of the loan per annum. As an additional inducement, and to reduce his risk, Atterbury, on July 15, 1958, entered into an agreement pledging certain of his securities "to insure A. S. V. Carpenter that Southern Oregon Moulding Incorporated will repay to the United States National Bank of Portland (Oregon) the sum of $45,000 borrowed by it from said bank, and to further insure and protect A. S. V. Carpenter against any loss in connection therewith." Minutes of a meeting of the directors of Somco incorporated by reference as part of the pledge agreement explained the consequences of the transaction as follows: " * * * in the event that the corporation fails to repay said $45,000 loan or any part thereof, said shares will be sold in accordance with the pledge agreement to pay any balance still owing to Mr. A. S. V. Carpenter." Somco agreed to hold Carpenter harmless from any loss arising out of his endorsement and guarantee of the note and to hold Atterbury harmless from any loss arising out of his pledge.

Somco's business affairs thereafter did not prosper. After about a year, changes in management occurred. Those with whom Atterbury had dealt and who he was willing to accommodate retired to advisory positions. Carpenter was elected to the board of directors. The company then considered making pine or fir moulding in addition to cedar, which would require additional investment in cutting tools and inventory, and thus require additional financing. In June, 1959, additional financing was secured. On Carpenter's guarantee the loan from the United States National Bank was increased to $95,000. Interest was increased to 5 per cent per annum, and later to 5½ per cent. All of these changes occurred with Carpenter's active participation, but without any consultation with Atterbury, or consent by him.

In July, 1960, on demand of the bank, Somco being unable to do so, Carpenter paid the total sum due. He then demanded payment by Atterbury and this litigation ensued. The issues involving the controversy between Atterbury and Carpenter were segregated for separate trial. That trial resulted in the judgment from which this appeal is taken.

Carpenter concedes that Atterbury's obligation could not, without his consent, extend to the increase in the loan, and that Atterbury's stock is on pledge only to the extent of the original $45,000 loan.

Atterbury, however, contends that under well recognized principles of the law of suretyship the changes in Somco's principal obligation served to discharge him as surety.

Carpenter contends (as the district court ruled) that Atterbury was not a surety, but was an indemnitor, and thus was not entitled to claim the defense of discharge on the basis of strictissimi juris as is later discussed. We cannot agree.

Under a contract of indemnity involving only two parties "the promisor agrees to save a promisee harmless from some loss, irrespective of the liability of a third person." Restatement, Security, § 82, comment 1 (1941). "The indemnitor's promise is not conditioned upon another's nonperformance of duty." Arant on Suretyship, § 17 (1931). Liability insurance is the typical example.

The surety, however, promises to protect the promisee only in case a third party, who is primarily liable on the obligation, fails to perform. The creditor-

promisee is entitled to compensation from the surety only in the event of default by the principal debtor. Restatement, Security, supra, comments f and l; Arant on Suretyship, supra, § 17.

◼ Atterbury's undertaking clearly falls into the latter category. Atterbury agreed to allow his securities to be sold for Carpenter's benefit only in the event that Somco did not repay the bank loan and thereby discharge its obligation to Carpenter. Somco's failure to hold Carpenter harmless was the condition precedent to the default of the pledge. Further, Atterbury had the right of a surety in a three-party context to proceed against Somco should he be required to make good upon his undertaking to Carpenter by virtue of Somco's nonperformance. The fact that Atterbury agreed "to insure * * * Carpenter against any loss" is not, as the district court thought, inconsistent with suretyship, for the nature of an insurance contract as one involving indemnity or suretyship depends entirely upon the existence of a third party who is primarily liable to the insured. See generally, Restatement, § 82, comment l.

The Oregon courts defer to both the Restatement and Arant for the most accurate descriptions of these relationships. See, e. g., Union Oil Company of California v. Lull (1960), 220 Or. 412, 425, 349 P.2d 243, 249.

◼◼ Atterbury was not merely a surety; he was a voluntary surety, not a compensated surety engaged in the business of executing surety contracts for an actuarially-computed premium. See Restatement, Security, supra, § 82, comment i. As such he is favored by the law, see Union Oil Company of California, supra, and can raise discharge defenses on the basis of strictissimi juris which are not available to compensated sureties. As to such volunteers the rule is that any contract modification between principal and creditor, unconsented to by

the surety, discharges the surety unless the modification is of a sort that benefits the surety; see Restatement of the Law, Security, § 128(a); or, by its very nature, cannot increase the surety's risk; see Restatement of the Law, Security, supra, § 128, comment e. Clearly the changes here in the amount of the debt and interest made it more difficult for Somco to repay and thereby increased the risk that Somco would default and that Atterbury's stock would be sought by Carpenter.

◼ The district court in its opinion states:

"Since the pledge agreement was silent as to the interest rate on the loan but specifically provided for renewals of the note, the parties must have intended the renewals to be made at then current rates of interest."

And further:

"Although it may have been more difficult for Somco to repay $95,000 than $45,000, Atterbury knew that the original $45,000 would be used by Somco to repay Wells-Fargo and would not provide any working capital for Somco. He was also aware of Somco's need for capital because he originally had arranged a $100,000 line of credit for Somco with Wells-Fargo. These facts, as well as the other surrounding circumstances show that the increase in the loan was anticipated by both Carpenter and Atterbury when the indemnity agreement was executed."

Such knowledge and awareness and inferred anticipation are not sufficient to deprive Atterbury of his defense of discharge in the absence of a clear and convincing showing of the elements of estoppel or waiver. See Craswell v. Biggs (1938), 160 Or. 547, 86 P.2d 71.

Reversed and remanded with instructions that judgment be entered for appellant.