406 P.2d 173

John J. MOYA, Plaintiff-Appellant and Cross Appellee,

v.

The FIDELITY AND CASUALTY COMPANY OF NEW YORK, a corporation, Defendant-Appellee and Cross Appellant.

No. 7625.

Supreme Court of New Mexico.

Sept. 27, 1965.

Compton and Chavez, JJ., dissented in part.

Dale B. Dilts, Albuquerque, for appellant.

Tansey, Wood, Rosebrough & Roberts, Farmington, for appellee.

MOISE, Justice.

Plaintiff-appellant here presents an issue of whether defendant-appellee, as surety on a "plugging bond," owed a duty to plaintiff, its principal, to attempt to locate him and notify him that his gas well was about to be plugged, and whether defendant actually had the well plugged before it was required to do so. By cross appeal the defendant complains of the trial court's refusal to grant it judgment on a counterclaim for amounts expended by it in meeting its obligation on the bond.

Plaintiff owned a gas well which went into production in 1953. Defendant had written a "plugging bond" which the trial court found ran to the New Mexico Oil Conservation Commission, guaranteeing plaintiff's compliance with the laws of the state concerning plugging of wells.

On October 4, 1961, the Oil Conservation Commission held a hearing at which plaintiff was present, wherein he was required to show cause why the well in question should not be plugged and abandoned. As a result of the hearing, an order was entered directing that the well be reworked by January 15, 1962 or be plugged and abandoned by that date and, further, that if it was going to be reworked, operations to rework should commence not later than November 15, 1961. On November 17, 1961, the commission notified defendant that plaintiff had not contacted it concerning

any reworking. A copy of this notice was sent by the commission to plaintiff at his last known address. Thereafter, defendant made several inquiries to determine if plaintiff was doing any reworking or plugging and, finding that he was not, made arrangements and had the well plugged on December 28, 1961. The court found that the weather was bad during much of December, 1961 and January, 1962, but on December 28, 1961 was such that the contractor employed by defendant could and did accomplish the work, which was done in accordance with rules of the commission and to its own satisfaction.

▇ Plaintiff complains that because defendant was his agent, there was a confidential or fiduciary relationship existing between them, and that defendant breached this duty by failing to notify plaintiff that it was about to plug the well which would have given plaintiff the opportunity to do the plugging himself. Plaintiff also alleges that proper notice would have allowed him time to salvage material in the well, or to rework it as plaintiff claims he intended to do.

Defendant says that the relationship is not a principal-agent one, but rather one of principal and surety. We do not consider that it is necessary for us to enter into any lengthy discussion of the legal principles distinguishing these relationships, nor do we need to discuss the differences in duties attendant upon each. The facts as found by the court which are not questioned by plaintiff on this appeal provide ample support for the conclusion reached by the court that defendant acted in strict compliance with its obligation and the commission's orders. As to plaintiff's contention that he intended to rework the well, it is sufficient to point out that, under the commission order, when he failed to commence such operation by November 15, his right to do so ended. There is no evidence that he had commenced any operation by that date.

As we understand plaintiff's position, he argues that since plaintiff had until January 15, 1962 to plug the well, defendant acted wrongfully and breached its fiduciary relationship in doing the work before that date, or at least in not contacting plaintiff to determine his intentions. We do not agree. Certainly appellee could not be required to wait until the morning of January 15, the date on which the plugging was ordered completed by the commission. We know of no requirement that prevents the surety proceeding to fulfill its obligation when the principal has defaulted. Neither was notice to him a requisite. See Counelis v. Counelis, 315 Mass. 694, 54 N.E.2d 177; compare Royal Indemnity Company v. Bottone, 66 N.M. 155, 343 P.2d 1042; Huffman v. National Surety Co., 244 Ky. 714, 51 S.W. 2d 950. So long as defendant was proceeding in good faith to perform its obli-

gation to the state when there was no evidence of any activity by plaintiff to do so, there can be no legal basis for complaint. November 15 having passed, the weather being bad and a real question being present whether the work could be accomplished by January 15 if not done when it was, we agree with the trial court that plaintiff failed to show any right to damages, and his complaint was properly dismissed.

■ We must now dispose of the cross appeal. It is defendant-cross appellant's position that the court erred in applying a rule of "mitigation" and, further, that having performed its obligation on the bond, it is entitled to recover "all loss, damage or expense" incurred by it, as provided in the indemnity agreement which was a part of the bond application signed by plaintiff-cross appellee.

As to the first point, it is plaintiff-cross appellee's position that since all the evidence necessary to a determination of the issue of mitigation was received in evidence without objection, the fact that no such issue was pleaded is immaterial, and the pleadings will be considered amended to conform to the proof. Cited in plaintiff-cross appellee's brief are Luvaul v. Holmes, 63 N.M. 193, 315 P.2d 837; Berkstresser v. Voight, 63 N.M. 470, 321 P.2d 1115; and many cases from other jurisdictions. However, these cases all differ because in each of them all parties were obviously aware of the particular issues or defenses to which the evidence was applicable, while here, the evidence was admissible in the main case and there was no suggestion that the testimony respecting mitigation was introduced in connection with the cross complaint.

Mitigation of damages, as a defense to defendant-cross appellant's counterclaim does not appear in plaintiff-cross appellee's requested findings and conclusions. Nor does defendant-cross appellant make any mention of any theory of mitigation of damages. The trial court's findings, for the first time, incorporate this theory in the case. 3 Moore, Federal Practice, par. 15.-13(2) at 991–92, states:

"The purpose of an amendment to conform to proof is to bring the pleadings in line with the actual issues upon which the case was tried; therefore an amendment after judgment is not permissible which brings in some entirely extrinsic issue or changes the theory on which the case was actually tried, even though there is evidence in the record—introduced as relevant to some other issue—which would support the amendment. This principle is sound, since it cannot be fairly said that there is any implied consent to try an issue where the parties do not squarely recognize it as an issue in the trial."

See Underwriters Salvage Co. of New York v. Davis & Shaw Furniture Co., 198 F.2d 450 (CA 10, 1952); and Freitag v. The

Strand of Atlantic City, 205 F.2d 778 (CA 3, 1953).

In Otness v. United States, 23 F.R.D. 279 (D.C. Alaska, 1959), the court said:

"There is no authorization within the above rule [Rule 15(b)] to allow an amendment to the pleadings to conform to proof merely because evidence presented which is competent and relevant to the issue created by the pleadings may incidentally tend to prove another fact not in issue. [Citing authority] * * * Where proof is taken only under the claim of the complaint, there is no proper case for amendment even though the proof may prove another issue. The plaintiff gave no indication of, or intention to claim, additional grounds for relief during the course of the trial."

■ Defendant-cross appellant's further claims are also correct. The contract of indemnity promised to reimburse for expenditures made under the bond unless made fraudulently. There being no question that the payments were made (the court so found), by what right are defendant-cross appellants denied the right specifically contracted for? We do not think they had any duty to mitigate—and the proof here does not support any conclusion that they should have. Illinois Surety Co. v. Maguire, 157 Wis. 49, 145 N.W. 768, supports defendant-cross appellant's position. Also compare

American Surety Co. of New York v. Inmon (CA 5, 1951) 187 F.2d 784; U. S. F. & G. Co. v. Jones (CA 5, 1937) 87 F.2d 346; U. S. F. & G. Co. v. Baker, 136 Ark. 227, 206 S.W. 314; Fidelity and Casualty Co. of N. Y. v. Harrison (Tex.Civ.App. 1925) 274 S.W. 1002; National Surety Co. v. Casner (Mo. 1923) 253 S.W. 1057. Another case is Carroll v. National Surety Co. (1928) 58 App.D.C. 3, 24 F.2d 268.

While the court found that the amount paid for the plugging was excessive and that no competitive bids were taken for the work, and further that salvageable material was left in the well, he further found that the "well was properly plugged and abandoned as required by law and by the bond, and that defendant [cross appellant] proceeded in a proper manner and at a proper time to carry out its obligation." This being true and mitigation of damages not being an issue in the counterclaim, there is no support for the court's conclusion that defendant-cross appellant was not entitled to recover the amounts expended by it in complying with its obligations.

It follows that the judgment in favor of defendant-appellee is affirmed, and the judgment on the counterclaim in favor of plaintiff-cross appellee is reversed.

It is so ordered.

CARMODY, C. J., and NOBLE, J., concur.

COMPTON and CHAVEZ, JJ., concurring in part and dissenting in part.

COMPTON, Justice (concurring in part and dissenting in part).

I concur in the results only of the majority opinion as it affirms the main appeal, and disagree with the results reached on the cross-appeal.

With regard to the counterclaim, the court found that by the terms of the application for bond the plaintiff agreed to reimburse the defendant for all losses incurred by it and that the defendant had expended a total of $2,170.21 in plugging the well. Nevertheless, it found that the defendant had failed to mitigate damages in that its contract with Frank Yockey, defendant's agent, to plug the well was entered into without receiving competitive bids and, that by Yockey's own admission, the amount charged, in order to protect himself against extraordinary contingencies, was double that which he ordinarily would expect, *and that no such contingencies existed in this case*. He was asked if $2,000.00 was the usual and reasonable charge for comparable work and stated, "I figured my expenses and total time and came up with a certain amount and then for the hazard of redoing this work—which often happens, I doubled that amount." The court further found that the defendant made no effort to contract plaintiff in person, either in connection with the matter of plugging the well,.

or in the. matter of enabling the plaintiff to salvage any materials or portions of the well, with the end result that salvageable materials in the well were destroyed or lost. The court also found that the salvageable materials were possibly of an equal value of the expenditures by the defendant in plugging the well, and set off one amount against the other in disallowing recovery to the defendant. The findings have ample support in the evidence.

But the majority says that the issue of mitigation of damages is an affirmative defense, one which was neither pleaded nor. tried. Obviously, the issue of mitigation was tried. What else could Yockey have. been talking about? Both parties participated on this issue. The principle is well established that where issues not within the. pleadings are fully litigated without objection, as here, the pleadings should be treated as amended by the trial court, and so considered by this court on appeal so as to put. in. issue all litigated questions. Hall v. Bryant, 66 N.M. 280, 347 P.2d 171; Berkstresser v. Voight, 63 N.M. 470, 321 P.2d 1115; Luvaul v. Holmes, 63 N.M. 193, 315 P.2d 837.

The record is replete with testimony not only as to the customary practice of salvaging materials whenever possible from wells to be plugged, but as to the materials in the subject well, their possible salvage value, and whether salvage of them by the defendant was contemplated . or ordered.

There is nothing in the evidence to indicate that the materials used in the well could not have been salvaged, nor that the plaintiff, had he been advised of the action contemplated by the defendant, would not himself have arranged to plug the well and recover all salvageable materials. It is obvious the court took into consideration the fact that the plaintiff would not have paid, or contracted to pay, double the cost of plugging his well without any basis therefor in fact.

Further, while both parties had a fixed obligation under the Commission's order of November 15, 1961 to plug and abandon the well by January 15, 1962, no enforceable legal liability for failure to do so had accrued as to either of them on December 28, 1961, when defendant plugged the well. Steck v. Home Indemnity Company, 74 N.M. 419, 394 P.2d 267; Brock v. Western National Indemnity Company, 132 Cal.App. 2d 10, 281 P.2d 571; Fidelity & Deposit Co. of Maryland v. Hobbs, C.C.A., 10 Cir., 144 F.2d 5; Atterbury v. Carpenter, U.S.C.A., 9th Cir., 321 F.2d 921.

It is obvious that the finding that the well was plugged at a proper time and in a proper manner refers to the actual plugging process as required by the Oil Conservation Commission. This issue was separate and apart from the issue of salvage or mitigation.

I think the majority overlooks the consequences of its opinion. It not only denies the plaintiff the right to salvage his property, but awards double damages for the defendant's premature plugging of the well. Also, it means that any time the Oil Conservation Commission orders a well plugged, the surety in all cases is free to move in prematurely and do the work, "sweep the well under the carpet," so to speak, and thereby double the cost of plugging to the owner. Being fearful of this result, I dissent as to the cross-appeal.

CHAVEZ, J., concurs.