WILLIAM E. YOUNKER & another *vs.* GERALD PACELLI.

Middlesex.    October 10, 1968. — December 2, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, SPIEGEL,
& REARDON, JJ.

*Contract,* For sale of real estate, Performance and breach.

Where the seller under a contract for sale and purchase of real estate
orally agreed to extend the time for performance, but did not set a
specific new date, the buyers were entitled to a reasonable additional
period for performance.  [741]

Under a purchase and sale agreement providing that the seller should
provide the buyers with "a written statement issued by the Federal
Housing Commissioner setting forth the appraised value of the premises
for mortgage insurance purposes," that the premises should be con-
veyed on a specified date, and that "this agreement is contingent on
the Buyer[s] obtaining a . . . mortgage," the buyers were entitled to
specific performance where it appeared that unsuccessful efforts by
them to obtain a mortgage by the date specified were reported to the
seller and the parties then executed a written extension of the time for
performance until a specified date about two months later, that on the
later date final action by a bank on an application by the buyers for a
mortgage had not been taken and the seller, who was kept informed of
the buyers' activities throughout, orally agreed to extend the time for
performance without setting any specific new date, wishing the trans-
action to be concluded as soon as possible, that within a reasonable
time after the oral agreement the mortgage application was approved
and the buyers were ready, able, and willing to close the transaction
but the seller then refused to make the conveyance, that he had taken
no action to provide the written statement from the commissioner and
the buyers had not waived their right to receive it, and that the
seller's failure to provide it bore on the buyers' inability to procure a
mortgage sooner.  [742–743]

BILL IN EQUITY filed in the Superior Court on June 27,
1966.

The suit was heard by *Quirico,* J.

*James F. Fitzgerald, Jr.,* for the plaintiffs.

*C. A. Peairs* for the defendant.

WILKINS, C.J.   In this suit in equity for the specific per-
formance of a written contract for the sale of real estate the
final decree was for the plaintiffs.   The defendant appealed.

The trial judge filed a statement of the material facts found by him. G. L. c. 214, § 23. The evidence is reported.

These facts are found by the judge or by ourselves. *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 178. *Counelis* v. *Counelis,* 315 Mass. 694, 696. This residential property is located at 111–113 Thorndike Street, Cambridge. The defendant lived on that street, as did Damian Percoco, a real estate broker, in whose hands the defendant placed the property for sale. As a result, on January 11, 1966, the contract was executed between the plaintiffs, husband and wife, and the defendant, who could not read nor write, and who signed by mark.

The contract contained the following provisions, among others: "It is expressly agreed that, notwithstanding any other provisions of this agreement, the Buyer shall not be obligated to complete the purchase of the premises described herein or to incur any penalty by forfeiture of deposits or otherwise unless the Seller has delivered to the Buyer a written statement issued by the Federal Housing Commissioner setting forth the appraised value of the premises for mortgage insurance purposes of not less than $28,000, which statement the Seller hereby agrees to deliver to the Buyer promptly after such appraised value statement is made available to the Seller. The Buyer shall, however, have the privilege and option of proceeding with the consummation of this agreement without regard to the amount of the appraised valuation made by the Federal Housing Commissioner.

"Said premises are to be conveyed on or before February 26, 1966 by a good and sufficient Quitclaim deed of the Seller, conveying a good and clear title to the same, free from all encumbrances, except: . . .

"The deed is to be delivered and the consideration paid, if the purchaser so requires, at the Registry of Deeds in which the deed should by law be recorded, on February 15, 1966 at 11:45 A.M. unless some other place and time should be mutually agreed upon. . . .

"This agreement is contingent on the Buyer obtaining a

conventional mortgage of $25,400.00, at his terms or obtaining an F. H. A. mortgage in accordance with the 'Amendment to Sales Contract.' "

Immediately after signing the agreement the plaintiffs took steps to obtain mortgage financing. They and the broker discussed such a loan with several banks, and applied for an F. H. A. mortgage, so called, at one or more banks. When they had not obtained the required financing by February 26, 1966, the broker reported their difficulties to the defendant. The parties then executed a written extension of the time for performance until April 28, 1966, the defendant again signing by mark.

The plaintiffs continued their efforts to obtain mortgage financing, a fact which the broker made known to the defendant. Among their applications was one which was made on March 23, 1966, to the Cambridgeport Savings Bank for a G. I. mortgage loan of $24,900. It was duly processed by the bank, but final action was not taken by April 28, 1966. On several occasions about that date the broker reported to the defendant as to the progress of the plaintiffs' efforts and their pending applications and told him that a second extension would be needed. The defendant replied that there was no such need; that he just wanted the plaintiffs to continue their efforts so that they could close the deal and get it over with. The broker informed the plaintiffs of that conversation and their efforts continued. On at least one occasion thereafter the defendant inquired of the broker as to the status of the mortgage financing, again saying he wanted to get the deal closed.

On or about May 12, 1966, the Cambridgeport Savings Bank approved the plaintiffs' application and sent its attorney a memorandum for checking the title and for the preparation of papers for closing the transaction. The attorney did what was required of him, and about June 1 informed the broker that he would be ready to pass papers at the attorney's office at a specified time on June 3. The broker requested the attendance of the defendant, who said he did not know whether he would be there. The plaintiffs

and the broker appeared at the appointed place and time, but neither the defendant nor any other person in his behalf did so.

The judge concluded that the plaintiffs were ready, able, and willing to close the transaction on June 3, 1966; and that the defendant refused, contending (1) that the contract had expired on April 28, 1966, and (2) that he never agreed to an extension beyond that date.

The judge found, however, that on or about April 28, 1966, the defendant agreed orally to extend the time without setting any specific new date. The judge correctly ruled that this allowed the plaintiffs a reasonable additional period for performance. *Marlowe* v. *O'Brien*, 321 Mass. 384, 386. *Kattor* v. *Adams*, 323 Mass. 686, 688. *Johnson* v. *Kelley*, 342 Mass. 724, 726–727. He found that the plaintiffs acted reasonably and promptly in doing all they were required to do; and that readiness to perform on June 3, 1966, was within a reasonable time, considering the tight money market and the other circumstances. The judge also found that the defendant had taken no action to obtain and furnish the plaintiffs, as promised, the written statement by the Federal Housing Commissioner; that its absence had a material bearing on the plaintiffs' inability to obtain an F. H. A. mortgage loan; that the plaintiffs had not waived this provision; and that the defendant, without just cause, had broken this part of the contract.

This case is particularly one for adherence to the principle, long recognized on appeal, that findings on oral testimony by a judge who has seen and heard the witnesses will not be reversed unless plainly wrong. *Barnum* v. *Fay*, 320 Mass. 177, 180, and cases cited. Here the careful report of the experienced trial judge presents no occasion to depart from this rule of appellate practice.

The defendant argues that many of the judge's findings lack support in the testimony. Chief among these is the mixed finding of law and fact that the defendant's failure to obtain and furnish the stipulated written statement of the Federal Housing Commissioner had a bearing on the plain-

tiffs' inability to secure an F. H. A. mortgage and was a breach of contract.

The defendant first asserts that the plain provision requiring that the defendant provide an F. H. A. appraisal was waived by the plaintiffs. We reject that assertion. In our opinion, the judge's finding that there was no waiver, at the very least, was not plainly wrong. We also reject the defendant's contention that the failure to provide the appraisal had no bearing on the plaintiffs' inability to secure an F. H. A. mortgage. Although no witness so testified in terms, a study of the record leads us to conclude that the judge was drawing an inference from the long period during which the plaintiffs, unsuccessfully at first, made efforts in good faith to obtain mortgage financing in a "tight market." We do not, however, need to rest our decision on this ground of breach, since the defendant's failure to convey was in itself a breach.

The judge found, in accordance with the testimony of the broker, who was the agent of the defendant, that there was an extension of time for performance beyond April 28. On that date the plaintiffs had not received the approval of their mortgage application from the Cambridgeport Savings Bank. Such approval soon came on May 12. The testimony of the broker was clear to the effect that the defendant, who had been informed of the plaintiffs' activities throughout, was aware of the status of their efforts at that time. The judge was fully justified in accepting the broker's testimony that the defendant had stated as his position that there was no need of a further written extension, and that all he wanted was that the transaction be brought to a conclusion as soon as possible. The judge could infer, as he plainly did, that the defendant expected his agent to bring this to the plaintiffs' attention and that they and the bank would proceed on this basis. There is nothing fatal in the absence of direct conversation between the plaintiffs and the defendant himself rather than with his agent. Therefore, we do not agree that the finding that the defendant orally

agreed to extend the time beyond April 28, 1966, was plainly wrong.

There was nothing improper about the seller's agent, his broker, talking with the principal, instead of with his lawyer. The broker and the defendant were neighbors, and the original contact leading to the sale came about between them.

It likewise was not error that the trial judge did not discuss the illiteracy or language difficulty of the defendant.

*Decree affirmed.*