GEORGE FIELD LAWTON, Judge of Probate, *vs.* NATIONAL SURETY COMPANY.

SAME *vs.* AMERICAN SURETY COMPANY OF NEW YORK.

Suffolk.    January 21, 22, 1924. — April 8, 1924.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Executor and Administrator,* Domiciliary, Ancillary, Bond.

Where the same person is appointed executor of the will of a testator, who was domiciled in this Commonwealth at the time of his death, and ancillary administrator with the will annexed of the estate of such testator situated in another State, the title in and right to possession of the assets situated in such other State vest exclusively in him as ancillary administrator; as domiciliary executor he has no right thereto, and a surety on his official bond as domiciliary executor is not liable for misconduct by him as ancillary administrator with regard to assets in the foreign State.

In the circumstances above described, the ancillary administrator is in no sense the agent of the domiciliary executor: his authority is independent and exclusive within the jurisdiction of the foreign State.

In a suit against the surety upon the probate bond of an executor, it appeared that the individual appointed executor in this Commonwealth also had been appointed as ancillary administrator of the estate of the testator in another State; that in that State a decree *nisi* had been entered by the local court surcharging his account as ancillary administrator after the payment of creditors local to that State; that subsequently a decree had been entered by the clerk of that court, upon petition by a creditor nonresident in the other State, directing the payment of the amount of such surcharge of the ancillary administrator's account to him as executor in Massachusetts, "for distribution in Massachusetts;" and that thereafter the decree *nisi* surcharging the account was set aside and a distribution in the foreign State of funds there in the hands of the administrator ratably to all classes of creditors was ordered, with which decree the administrator had not complied. *Held*, that no breach of the bond of the Massachusetts executor was disclosed and a finding for the defendant was justified.

TWO ACTIONS OF CONTRACT against the sureties on three probate bonds given by Jere J. McCarthy and Milton A. Gherst as executors of the will of Joseph Middleby, late of Malden, for alleged breaches of the bonds, the plaintiff alleging that McCarthy and Gherst, who had been appointed ancillary administrators of the estate of the decedent in Pennsylvania, on their accounting there had been "surcharged with the sum of $49,678.66, and the said McCarthy and Gherst were ordered to pay the said amount to the said McCarthy and Gherst 'for accounting in Massachusetts;' that the said McCarthy and Gherst have failed and neglected to account for the said sum." By permission of the judge of probate, the actions were brought for the benefit of Robert M. Bowen, the administrator *de bonis non* of the estate in Massachusetts appointed after the death of the executors. Writs dated July 17, 1920.

In the Superior Court, the actions were heard by *Qua*, J., without a jury, upon an agreed statement of facts. It appeared that McCarthy and Gherst were appointed and qualified as executors of the will of said Joseph Middleby on May 29, 1911, and on June 10, 1911, they were appointed ancillary executors in Pennsylvania where the deceased testator had owned an automobile manufacturing plant.

The executors gave in the Probate Court joint and several bonds in the usual form given by executors in Massachusetts.

Under the laws of Pennsylvania the court having jurisdiction of the settlement of the estate of Middleby was the Orphans' Court for Berks County, Pennsylvania.

Pursuant to the will of the testator, the executors conducted the business of manufacturing automobiles at the factory which had belonged to the decedent in Reading, Pennsylvania. They severally filed accounts on July 27, 1912, in the Orphans' Court after they had been cited to show cause why they should not file such accounts.

On September 7, 1912, the Orphans' Court ordered and directed McCarthy to produce and keep within the jurisdiction of the court the property of every description, including money, belonging to the estate of Joseph Middleby, deceased. On August 10, 1912, Gherst obtained an injunction against McCarthy restraining him from further operating the automobile plant. On September 12, 1912, Gherst filed a petition in the Orphans' Court reciting that McCarthy had refused to act in conjunction with Gherst in performing his duties as ancillary executor and praying for McCarthy's discharge as ancillary executor. On January 11, 1913, the court entered a decree after a hearing by which McCarthy was dismissed as ancillary executor and ordered to file an account of any assets of the estate in his hands not already accounted for. McCarthy appealed from this decree to the Supreme Court of Pennsylvania, which court affirmed the decree on July 5, 1913.

On January 31, 1914, Gherst filed a second account as ancillary executor in the said court. McCarthy never filed any account except the one filed on July 27, 1912. Hearings were held in the Orphans' Court upon the first accounts of McCarthy and Gherst and the second account of Gherst. In the course of the hearings, McCarthy appeared specially by an attorney at law, filed several pleadings in which he objected to the jurisdiction of the court, but took no other part in the hearings on the accounts and no personal service ever was made upon him in any Pennsylvania proceedings after September 12, 1912. On June 27, 1914, the Orphans'

Court entered a decree *nisi* on the accounts; and on July 7, 1914, entered a decree *nisi* modifying that decree. The first of these decrees charged Gherst and McCarthy with a loss which they had incurred in running the testator's automobile factory in said Reading and ordered Gherst and McCarthy to pay the amount of $47,987.98 to Gherst, executor, for distribution in Massachusetts. The decree also contained an order for the distribution of the balance of $25,265.55, cash in Gherst's hands, and of the amount of this surcharge, after the deduction of relatively unimportant preferred claims, among Pennsylvania creditors of the decedent, and directed the distribution of a balance of $47,733.66 to Gherst and McCarthy, executors, subject to the direction of the Massachusetts courts. The second decree, entered on July 7, 1914, disallowed certain claims for compensation in the account and increased to $49,678.66 the balance payable to Gherst and McCarthy, executors, for accounting in Massachusetts. After due hearings upon exceptions, the Orphans' Court overruled the exceptions on November 7, 1914, and filed an opinion, wherein it stated that the order " should be construed to direct a distribution to foreign creditors only as an incident to the distribution to resident legatees and devisees . . . It is, however, only fair to the accountant to say that the distribution ordered should not be carried out unless it can be carried out fully and completely. If, for any reason, it is impossible to do so, the accountant should hold the fund subject to the further order of the court, made in pursuance of the proceedings outlined in § 85, Rules of Court."

In subsequent proceedings in the Pennsylvania court, after recovery upon a suit upon a bond of the register of wills for permitting McCarthy to act as administrator without filing a bond, the above described decree of June 27, 1914, was set aside on April 1, 1919, and a distribution of a fund in the hands of the ancillary administrators was ordered ratably to all classes of creditors. This order of distribution was finally carried out, with the result that nearly twenty per cent of the debts which were entitled to share in the distribution remained unpaid. No objections or exceptions

to this decree were filed and it was made absolute, although the beneficial plaintiff in these actions, Robert M. Bowen, administrator *de bonis non* of the estate not already administered in Massachusetts, appeared personally in the Orphans' Court and participated in hearings.

Neither Gherst nor McCarthy filed an inventory in Massachusetts or accounted for any of the funds with which they were charged in the Pennsylvania court, and none of the Pennsylvania estate ever was transferred to them or either of them as executors in Massachusetts.

The plaintiff in each action asked for the following rulings:

" 1. Upon all of the evidence in the case there has been a breach of the bonds.

" 2. Upon all of the evidence in the case the plaintiff is entitled to judgment in the penal sum of the bonds.

" 3. The decree of the Orphans' Court for Berks County, Pennsylvania, is *res judicata* and the plaintiff is entitled to judgment in the penal sum of the bonds.

" 4. The domiciliary executors, Jere J. McCarthy and Milton A. Gherst, were bound to account in Massachusetts for the balance remaining unpaid of the $49,678.66 and interest thereon."

" 6. The failure of McCarthy to file a bond with sufficient sureties as ancillary executor pursuant to the laws of Pennsylvania constitutes a breach of the bond.

" 7. The domiciliary executors must be held to account in Massachusetts for the whole of the personal property and effects which have come to their hands wherever found, or by whatever means collected.

" 8. Upon all of the evidence in the case it appears that there was a surplus in the hands of the ancillary executors arising out of the administration of the testator's goods and estate in Pennsylvania which the domiciliary executors were accountable for in Massachusetts in the same manner as they would have been if other persons had been appointed ancillary executors and had paid over a balance to them.

" 9. Upon all of the evidence in the case and pursuant to Article 4, § 1, of the Constitution of the United States full faith and credit should be given to the final decree of the

Orphans' Court of Berks County, Pennsylvania, entered on November 7, 1914.

" 10. Upon all of the evidence in the case and pursuant to Article 4, § 1, of the Constitution of the United States full faith and credit should be given to the final decree of the Orphans' Court of Berks County, Pennsylvania, entered on October 30, 1915."

The rulings were refused and the judge found for the defendant in each action. The plaintiff alleged exceptions.

*James J. McCarthy,* (*R. M. Bowen* with him,) for the plaintiff.

*J. E. McConnell,* for National Surety Company.

*H. LeB. Sampson,* (*E. A. Howes* with him,) for American Surety Company.

PIERCE, J. These are two actions of contract wherein the plaintiff seeks to recover against the sureties on three probate bonds given by the executors of the will of Joseph Middleby, deceased, to the judge of probate for the county of Middlesex.

By permission of the judge of probate these actions are brought for the benefit of Robert M. Bowen, the administrator *de bonis non* of the estate in Massachusetts, appointed after the death of the executors. The will is dated May 18, 1911.

In these actions the breaches relied upon are the failure of Gherst and McCarthy to comply with the decrees of the Orphans' Court of November 7, 1914, and October 30, 1915. The trial judge found for the defendant in each action and the cases are before this court upon the plaintiff's exceptions to the judge's rulings and refusals to rule as requested. The finding for the defendants was right.

The title and right of possession in the Pennsylvania assets vested exclusively in the ancillary executors upon their appointment; and the domiciliary executors had no right in or to such assets, even though the same individuals held the offices of domiciliary and ancillary executors. *Low* v. *Bartlett,* 8 Allen, 259, 263. *Emery* v. *Batchelder,* 132 Mass. 452, 455. *Cowden* v. *Jacobson,* 165 Mass. 240, 243–4.

A domiciliary administrator as such is not liable upon his

local bond for his conduct as ancillary administrator abroad. *Hooker* v. *Olmstead,* 6 Pick. 480. *Low* v. *Bartlett, supra. Cowden* v. *Jacobson, supra. Harvey* v. *Richards,* 1 Mason, 381.

The ancillary executors were in no sense the agents of the domiciliary executors and their authority was independent and exclusive within the jurisdiction of their appointment. *Gray* v. *Lenox,* 215 Mass. 598.

The domiciliary executors had no right and consequently were under no legal obligation to demand that the fund created by the surcharged account after the payment of local creditors, should be turned over to them for distribution in Massachusetts, until the Pennsylvania courts by a final decree should order its executors to pay over such fund to the Massachusetts executors. *Gray* v. *Lenox, supra. Dent's Appeal,* 22 Penn. St. 514. *Mansfield* v. *McFarland,* 202 Penn. St. 173. *Sayre's Executors* v. *Halme's Executors,* 61 Penn. St. 299. *Normand's Adm'r* v. *Grognard,* 2 C. E. Green, 425.

The decrees of June 27, July 7, and November 7, 1914, whereby as a surcharge to their account the ancillary executors were ordered to pay $49,678.66 to M. A. Gherst and Jere J. McCarthy, executors, subject to the direction of the Massachusetts courts, was an order *nisi,* based upon the assumption that Gherst was solvent and could collect that sum in whole or in part from Gherst and McCarthy as individuals.

That the order was thus conditional is manifest and clear from the statement in the decree of November 7, 1914, in reply to the suggestion that the estate would be insolvent if the surcharge could not be collected, that " It is, however, only fair to the accountant to say that the distribution ordered should not be carried out unless it can be carried out fully and completely. If, for any reason, it is impossible to do so, the accountant should hold the fund subject to the further order of the court, made in pursuance of the proceedings outlined in Sec. 85, Rules of Court."

On appeal from this decree the Supreme Court in Pennsylvania recognized that the order for distribution was

based upon the theory that the estate was solvent and referred with apparent approval to the limitation of the order in case it should eventuate that the estate was in fact insolvent.

The decree of October 30, 1915, upon which the plaintiff relies, was without force unless the fund created by the order for surcharge was collected.

No fund was ever created or came to Gherst as the result of the order of October 30, 1915, and consequently no money came to him as domiciliary executor which he or McCarthy could account for in the Massachusetts Probate Court. The cases of *Jennison* v. *Hapgood,* 10 Pick. 77, *Smith* v. *Sherman,* 4 Cush. 408, *Martin* v. *Gage,* 147 Mass. 204, *Clark* v. *Blackington,* 110 Mass. 369, *Emery* v. *Batchelder,* 132 Mass. 452, and *Morrison* v. *Hass,* 229 Mass. 514, relied on by the plaintiff, present no rules of law which are inconsistent with the rulings of the trial judge that misconduct in the Pennsylvania administration constitutes no breach of the Massachusetts bonds; and that as there was never any final decree in Pennsylvania of any surplus to the Massachusetts estate there was never any sum for which the Massachusetts executors as such were accountable.

A careful examination of the exceptions taken to the rulings made and refused in the light of the agreed facts, discloses no reversible error.

*Exceptions overruled.*