TAYLOR, Appellant, v. HANLON, et al, Respondents.

(248 N. W. 509.)

(File No. 7320. Opinion filed May 15, 1933.)

*Danforth & Seacat,* of Alexandria, and *Bruell & Henderson,* of Redfield, for Appellant.

*Frank Vincent,* of Alexandria, and *Wagner & Ryan,* of Mitchell, for Respondents.

WARREN, J. The plaintiff sought to recover from the defendants as sureties upon a bond of Andrew Smith as executor of the estate of Francis E. Taylor, deceased, the sum of $5,210.62 and interest.

From the evidence the trial court made lengthy findings, which findings seem to us to be in harmony with the evidence in the record before us and are in substance as follows: Francis E. Taylor died testate in April, 1920, in Hanson county, S. D. His entire estate was devised and bequeathed to his four children, Ethel M. Taylor-Hancock, Harry E., Francis E., and Vera Taylor. The will was admitted to probate by an order in the county court in May, 1920. Andrew Smith, the executor named in the will, was duly appointed and qualified. His bond was signed by Leo Schroeder, P. T. Hanlon, and one Lee Brown. The bond was in the usual form, and the terms thereof are not questioned.

The material parts of the will provided that one-third of all

the real estate in testator's name at the time of his death should vest in his widow; to the children, the balance of the real estate and all other personal property share and share alike. The Woodman insurance was made payable to his children, Ethel and Harry, and the Shrine insurance to Francis. It also provided that a payment be made out of the other property to offset the advantage thus created to the children mentioned therein. He further directed that, as he had advanced money at divers times to his children, Ethel and Harry, the other two children be paid out of the estate after deducting therefrom the share mentioned to his wife, the sum of $1,000 each. He further directed that all his real estate should be sold after his death, but that the farm in Pleasant township should not be sold for less than $125 per acre, and that the share of his estate which was therein set apart to his children Francis E. and Vera *be kept on deposit for them in the Farmers' Bank of Emery, S. D.,* until they arrived at the age of 18 years, and that the Farmers' Bank of Emery pay on the said share of his estate the rate of interest paid to all other depositors during the terms of deposit.

It would appear that the real estate of said testator referred to in the will, except the homestead, was sold by him prior to his death, and that his wife, Isabel Taylor, died during his lifetime, and at his death the estate consisted principally of a note or notes amounting to the sum of $13,000, which represented a part of the proceeds of the sale of the real estate described in his will, and was then invested in a real estate mortgage and became due in February, 1924.

At the time of his death, the homestead consisted of a small tract of land in Emery, S. D., which was occupied by the deceased and his children, including the plaintiff. The children continued to live thereon and occupy the said premises as their home and homestead after the testator's death. There was also a small amount of personal property of various kinds at the time of the testator's death. The executor took possession of all of the property excepting the homestead, collected the principal and interest of said mortgage indebtedness from time to time as the same became due, and deposited the amounts so collected, prior to April 1, 1924, in the Farmers' Bank of Emery, S. D. (said bank being designated as the depository bank in testator's will), and which,

prior to said bank's suspension, amounted to the sum of $14,225.69. All told, there seems, according to the executor's report, to have been received the sum of $16,762.87.

At the time the bank was suspended, there was a checking account of $439.63, one certificate of deposit of $5,000 and another of $5,500. The certificates of deposit provided for 5 per cent interest per annum. The superintendent of banks during the liquidation thereof issued certificates of indebtedness payable out of the depositors' guaranty fund of the state of South Dakota, for the respective amounts as follows: One for $439.63 and the other for $10,565.86.

In July, 1926, the executor filed his final account of the moneys received and expended during his administration, and thereafter in August filed an amended final account showing the various items that had been collected and where the funds had been deposited and the matters relating to the suspension of the bank and the issuance of the guaranty fund certificates and the payment of dividends thereon aggregating 40 per cent, and that there was $4,079 in cash and the certificate of indebtedness amounting to $6,053.03 to be distributed to the heirs.

Pursuant to due notice there was a hearing before the county court on the 24th day of August, 1926. The executor appeared in person and by his attorney, and all the heirs and devisees appeared in person and by their respective attorneys, and upon a full hearing and due consideration the court made and entered a decree of settlement of accounts of said executor in which said final account was allowed and approved. The decree of settlement is quite full, and makes the usual recitals approving the various accounts of the executor, and on the same day, after having made the decree of settlement of accounts, the county court made and entered its final decree distributing all of the property and funds to the various persons entitled to participate and share in the proceeds of the estate. The order and decree were filed and entered. They were excepted to, and the exceptions were allowed by the court. It would further appear that no appeal was taken by the plaintiff or any of the heirs from the decree of settlement of accounts nor from the final decree, and that the plaintiff herein received from the executor the sum of $1,777.91 as his share of the money then on hand. The trial court has made findings to the effect that the

final decree and decree of settlement of accounts appeared to have been acquiesced in by the plaintiff and the other heirs and devisees, and that the same became final and is effective against the plaintiff.

It would further appear that the heirs, devisees, and the successors in interest, including the plaintiff, were awarded their distributive share in the guaranty fund certificates, and thereby became the owners thereof. The executor, Andrew Smith, died shortly after the entry of the final decree. The last portion of paragraph 8 of the court's findings is as follows: "That the plaintiff is and ought to be barred and estopped from maintaining this action on the first and third causes of action set forth in his complaint, and the defendants are not and neither of them are in any manner, liable to the plaintiff hereon."

Three conclusions of law were made in harmony with the findings approving the accounts of the executor and findings that the final decree was binding against the plaintiff and that he was estopped from claiming any sum whatsoever from the bondsmen or either of them in the matters and things alleged in the first and third causes of action set out in plaintiff's complaint.

The court further made a conclusion of law that the executor was not entitled to and did not have the possession of the homestead, as the plaintiff and the other heirs and devisees of said deceased occupied said premises, and that there was no liability attached to the executor or the defendants for the matters alleged in the second cause of action.

The third conclusion of law provides for the dismissal of the three causes of action. A judgment in conformity with the findings and conclusions was entered by the court. From the making of said judgment and the denying of plaintiff's motion for a new trial, the plaintiff has appealed to this court.

The respondents appeared by separate counsel and filed separate briefs. One of the assignments of error goes to the second cause of action wherein plaintiff claims damages for the alleged neglect of the homestead property, said homestead being the homestead of the testator at the time of his death and also occupied after testator's death by the plaintiff. There seems to be no evidence offered by the plaintiff during the trial showing damages or acts of negligence upon the part of executor in not caring for said homestead.

An examination of section 3345 of the S. D. Revised Code of 1919 fairly indicates that the possession of the homestead does not pass into the hands of the executor, as the heirs are entitled to the possession of the same and the rents therefrom. We dispose of this assignment of error upon the authority of In re Gillette's Estate, 43 S. D. 509, 180 N. W. 952, in which we said that there was no evidence tending to show abandonment by the husband, and that the homestead was therefore the homestead of the wife and minor children, and, such being the case, the widow was entitled to have the homestead set apart to her, and in the case at bar it is conceded that the children, including the plaintiff, occupied and used the premises after decedent's death, and therefore no damages will lie against the executor and bondsmen, for the executor was acting under section 3301 of the 1919 S. D. Revised Code, which provides: "The executor or administrator is entitled to the possession of,. and must take into his possession, all the property of the estate, *except the homestead and personal property not assets reserved to the widow and children or either of them."* (Italics are ours.)

As to the assignments of error relative to the claim made by appellant for the recovery of $2,210.62 due him as his distributive share of funds in the hands of the executor and involving the question whether the sureties on the bond are liable for this balance which was awarded and assigned to appellant in the final decree of distribution in the form of certificates of indebtedness issued to the executor by the depositors' guaranty fund commission on account of the funds deposited by the executor in the Farmers' Bank of Emery, we find that the trial court made quite comprehensive findings and conclusions which we have fully narrated in giving the facts disclosed by the record. In said findings it will be observed that the report shows the deposit of said funds in said bank pursuant to the terms of the will, the issuing of the guaranty fund certificates to the executor, and the balance of money on hand. The appellant and all of the heirs appeared and were represented by counsel, and were fully advised of the manner in which the estate had been administered. Exceptions to the order and decree were taken, and the record was complete for an appeal from said order and decree by any person feeling aggrieved thereby.. No appeals were taken. Did the decree become final and binding upon

all the parties? Did the final decree contain the necessary averment and disclose the facts as provided for by section 3470 of the 1919 S. D. Revised Code and amendments (Laws 1921, c. 228, and 1929, c. 119)? We think it did, and, having reached that conclusion, we hold that it was binding upon the heirs, and could only be altered or set aside in the manner provided by our statutes as follows: ╷"Such decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal." See Calhoun v. Bryant et al., 28 S. D. 266, 133 N. W. 266; Stenson v. H. S. Halvorson Co., 28 N. D. 151, 147 N. W. 800, L. R. A. 1915A, 1179, Ann. Cas. 1916D, 1289.

All matters pertaining to the administration of the estate were brought to the attention of the county court at the hearing upon the executor's final report; all of the parties and counsel were present at the hearing. There was before the county court the will which provided that the share of the estate given to the appellant and his sister should be kept in the Farmers' Bank of Emery until they arrived at the age of 18 years, and all other matters pertaining to the administration of the estate, together with the guaranty fund certificates, disposition of the funds, and the certificates on hand. All this was adjudicated by the county court, which has been empowered by our statutes to determine these matters and has been given full and complete jurisdiction relating to distribution of properties belonging to estates. It is therefore idle to say that such an adjudication and an order and decree entered by a county court with all the parties present and with the assistance of counsel amounts to nothing and has no binding force and effect.

We have carefully examined all of the other assignments of error and the record in support of said assignments, and are of the opinion that the record in all things supports the findings, conclusions, and judgment reached by the trial court; that errors assigned upon the ruling of the evidence before the trial court were not prejudicial, and did not affect or control the trial court's decision.

The order and judgment appealed from are affirmed.

RUDOLPH, P. J., and POLLEY, J., concur.

CAMPBELL and ROBERTS, JJ., concur in result.