Josephson, J.
This is an action by defendant Western Surety Co. (“Western Surety”) against plaintiffs Michael D. Brockelman (“Brockelman”), Successor Administrator of the Estate of Paul H. Kaltsas, and John J. Moynihan, First Justice of the Worcester Probate and Family Court Department.[4] The plaintiffs allege that defendant Lefcothea Kaltsas (“Kaltsas”), individually and as Former Administratrix of the Estate of Paul H. Kaltsas, breached her fiduciary duty to the estate of the late Paul H. Kaltsas (“decedent”) (Count I); Kaltsas exercised intentional and wrongful acts of conversion and misappropriation over the decedent’s estate to which she had no right of possession (Count II); Kaltsas unreasonably and improperly used, abused, mismanaged, and wasted the property in the decedent’s estate (Count III); defendant Western Surely is liable on its bond to the decedent’s estate for Kaltsas’ breaches of fiduciary duty relative to her appointment as administratrix of the estate (Count IV); Western Surety is liable on its bond to the decedent’s estate for Kaltsas’ intentional and wrongful acts of conversion and misappropriation (Count V); and Western Surety is liable on its bond for Kaltsas’ unreasonable and improper use, abuse, mismanagement, and waste of the real property in the decedent’s estate (Count VI). Defendant Western Surety has moved for summary judgment on Counts IV, V and VI. The plaintiffs oppose the defendant’s motion and have made a cross-motion for summary judgment. Western Surety opposes the plaintiffs’ motion for summary judgment. For the following reasons, the defendant’s motion for summary judgment is ALLOWED in part and DENIED in part, and the plaintiffs’ cross-motion for summary judgment is DENIED.

BACKGROUND

On November 9, 1980, the decedent, a domiciliary of Greece, died testate. He left an “usufruct” (life estate) for his wife, Kaltsas, with his three children as “naked owners” (remaindermen). The decedent’s estate consisted of shares of stocks of Massachusetts corporations, funds in several Massachusetts bank accounts totaling $883.00, coins with a total value under $200 in a safe deposit box, and real estate in Worcester County (the Massachusetts ancillary estate); stocks, bonds, and real estate in Greece (the domiciliary estate); real estate in Spain; and shares of stocks of New York corporations and funds in a bank account in New York.
In 1981, Kaltsas was appointed administratrix with the will annexed of the ancillary estate in Worcester Probate Court. Kaltsas exercised dominion and control over the decedent’s assets outside Massachusetts, and she also acted as domiciliary executrix.[5]
In June 1981, Kaltsas filed an inventory listing the assets within the ancillary estate in Massachusetts, namely shares of stocks of Massachusetts corporations, real estate, and coins of nominal value.[6] The stocks from the Massachusetts corporations were sold by agreement of the usufruct and naked owners for $250,000. Kaltsas v. Kaltsas, 22 Mass.App.Ct. 689, 690 n.2, rev. denied, 398 Mass. 1105 (1986). These proceeds, as well as proceeds from the sale of corporate stock not within the Massachusetts ancillary estate, were placed in accounts in Kaltsas’ name individually and not as administratrix of the ancillary estate.
On February 24, 1983, one of the remaindermen received a restraining order precluding Kaltsas from drawing on and/or transferring assets both within and from outside the ancillary administration of Massachusetts. This order was modified on March 24, 1983, requiring Kaltsas to transfer estate assets in her personal account to assets held by her as an ad-ministratrix. She was also ordered to render a proper accounting of the Massachusetts ancillary estate’s *632 assets and to file a corporate surety bond for $500,000.[7] On April 12, 1983, the court denied Kaltsas’ motion to dismiss the restraining order and its modification.
On October 6, 1983, Kaltsas, as ancillary ad-ministratrix, received a bond for the penal sum of $500,000 from Western Surety for the ancillary estate. On or about October 6, 1983, Kaltsas filed an accounting of the decedent’s estate for the period of November 9, 1980, through September 30, 1983.
On February 1, 1984, the Probate Court vacated the restraining orders of February 1983 and March 1983. The court found that the usufruct and all the naked owners had agreed to the sale of the stock from the Massachusetts corporations for $250,000. On that same day, the court enjoined the use of the proceeds from the sale of stocks from the Massachusetts corporations, declaring that the $250,000.00 realized from the sale be deposited into the decedent’s estate and that the principal sum remain unaltered unless otherwise ordered by the court, or with the assent of Kaltsas and all the beneficiaries.
In 1986, the Appeals Court determined that the Massachusetts real estate and assets from the sale of the stock from Massachusetts corporations were subject to ancillary administration in Massachusetts, and that the proceeds from that stock sale were to be held in an account in Kaltsas’ name as ancillary ad-ministratrix. Kaltsas, 22 Mass.App.Ct. at 690 n.2, 691.
On May 26, 1987, the Probate Court issued a temporary restraining order enjoining the Bank of Boston from distributing any funds it held in the name of Lefcothea Kaltsas individually and/or as ad-ministratrix with the will annexed of the decedent’s estate. In September 1987, the Probate Court denied Kaltsas’ motion to revoke the February 1984 restraint on the assets derived from the sale of Massachusetts shares. In November 1987, Kaltsas filed federal and state estate tax returns for the decedent’s estate, in February 1988 she filed Massachusetts estate taxes, and in March 1988 Kaltsas filed the decedent’s federal income tax return. On June 5, 1989, Kaltsas moved to have the funds released from her account as ad-ministratrix of the estate to pay the federal and state estate taxes. On July 20, 1989, the Probate Court denied her motion.
On October 23, 1989, the Probate Court modified its orders to release funds from Kaltsas’ account as administratrix of the estate to pay the state and federal estate taxes.
On July 17, 1990, the Probate Court, after finding that Kaltsas deposited the proceeds from the sale of the stock from Massachusetts and non-Massachusetts corporations into Massachusetts bank accounts and invested the liquidated assets in the Commonwealth, removed Kaltsas as administrator of the decedent’s estate and appointed Brockelman as successor administrator.

DISCUSSION

A. Standard of Review

Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(b). Courts may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community Nat’l Bank, 369 Mass. at 553. A moving party which does not bear the burden of proof at trial is entitled to summary judgment if it submits affirmative evidence, unmet by countervailing materials, that either negates an essential element of the nonmoving party’s case or demonstrates that the nonmoving party has no reasonable expectation of proving an essential element of its case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
B. Western Surety’s Liability for Kaltsas’ Alleged Breach of Fiduciary Duty to the Ancillary Estate
The plaintiffs claim that Western Surety is liable on its bond for Kaltsas’ breach of fiduciary duty to the decedent’s estate by her gathering non-Massachusetts securities, selling them, and placing the proceeds in Massachusetts banking or investment institutions, primarily in her name individually; her failure to render an annual account of the estate; • and the additional taxes, interest, and penalties generated by Kaltsas’ disallowed deductions and late filing of state and federal estate tax returns. Western Surety claims that it is only liable on its bond for the Massachusetts ancillary estate, which consists only of those assets found in Massachusetts at the time of the decedent’s death.
A surety’s liability is the same as that of the executrix or administratrix herself and whatever evidence is allowed as evidence upon which to charge the principal is also allowed against the surety. Harmon v. Weston, 215 Mass. 242, 246 (1913); McIntire v. Mower, 204 Mass. 233, 235 (1910); Choate v. Arrington, 116 Mass. 552, 556 (1875). See also Counelis v. Counelis, 315 Mass. 694, 699 (1944). If a loss occurs on an account of expenditures improperly made by an executrix acting as trustee, she and the sureties on the executrix’s bond are liable. Hemenway v. Harrigan, 287 Mass. 149, 153 (1934); Murray v. Massachusetts Bonding & Ins. Co., 283 Mass. 15, 16 (1933); Forbes v. Allen, 240 Mass. 363, 366 (1922).
Western Surety issued a bond for $500,000 to Kaltsas for the decedent’s ancillary estate in Massachusetts on October 6, 1983. The statutory conditions of the bond were that Kaltsas would (1) make and file within three months an inventory of the estate; (2) *633 administer according to the law and pursuant to the decedent’s will all personal property which came into her possession as fiduciary, as well as the proceeds of any real estate which Kaltsas, as fiduciary, might be authorized to sell or mortgage; and (3) render a true account of administration once each year. G.L.c. 205, §1.
1. The Massachusetts Ancillary Estate
Under G.L.c. 199, §1, the decedent’s ancillary estate in Massachusetts is comprised of real estate located in Massachusetts and the dwelling thereon, and $250,000 received from the sale of stocks of private corporations organized in Massachusetts.[8] Kaltsas, 22 Mass.App.Ct. at 690 n.2.
A fiduciary appointed in one state is not accountable for assets collected from a foreign state which are subsequently brought to the state where she is a fiduciary. Feeney v. Feeney, 335 Mass. 534, 537 (1957) (an ancillary executrix in Massachusetts is only accountable for assets of the decedent’s estate received by her in her capacity as ancillary executrix in Massachusetts, and not for assets received by her in another capacity); Lawton v. National Sun Co., 248 Mass. 440, 445 (1924) (title and right of possession of the ancillary assets vests exclusively in the ancillary executor; where the same individual is both domiciliary and ancillary executor, the domiciliary executor has no right in or to such assets); Cowden v. Jacobson, 165 Mass. 240, 243 (1896) (an administrator of both domiciliary and ancillary estates cannot be held accountable for the personal property of the domiciliary estate in the ancillary state). The assets derived from the sale of property from a foreign state did not come into Kaltas’ hands in her capacity as ancillary ad-ministratrix for the decedent’s Massachusetts estate. The Massachusetts ancillary estate, therefore, does not include property or proceeds from the sale of property which was received by Kaltsas in any capacity other than that of ancillary administratrix and subsequently brought into Massachusetts. Kaltsas, 22 Mass.App.Ct. at 690 n.2.
The Massachusetts Probate Court has equitable jurisdiction to protect the interests of the beneficial owners of bank and brokerage accounts held in Massachusetts, even though the property rights therein must ultimately be adjudicated by a foreign court. Id. at 693. It does not have jurisdiction, however, to adjudicate relief for conversion of non-Massachusetts assets and/or stock proceeds. Dodson v. Maroney, 15 Mass.App.Ct. 982 (1983). Only the court with jurisdiction at the situs of the breach and/or conversion can determine the issue of conversion and fraudulent transfer. Kaltsas, 22 Mass.App.Ct. at 692.
The plaintiffs cite Beardsley v. Hall, 291 Mass. 411 (1935), for the proposition that proceeds from a foreign state, although not technically Massachusetts assets, should have an accounting as part of the Massachusetts estate, and that failure to do so breaches the statutory conditions of the administrator’s bond. The issue in Beardsley involved rents collected on Connecticut real estate under a testamentary trust and brought into Massachusetts. The court noted that administration of trusts of realty relies on different rules than do trusts of personalty. Id. at 417. Furthermore, the Beardsley court held that while the rent money was in the form of personalty and was in Massachusetts, that alone did not make it part of the ancillary estate. Id. At 416.
Here, the issue involves personalty, not realty, and therefore is to be administered under rules different from those which govern Beardsley. The assets from the sale of the stocks and bonds from New York corporations, which was made subsequent to the decedent’s death, remain part of the decedent’s personal property in the New York ancillary estate and not subject to administration in Massachusetts. Bringing those assets into the Commonwealth’s jurisdiction does not make them part of the Massachusetts ancillary estate. Kaltsas, 22 Mass.App.Ct. at 690 n.2.
The plaintiffs also cite Koutoudakis v. Great American Indem. Co., 285 Mass. 466 (1934), for the proposition that an administratrix can be held liable for a breach of her bond if she does not account for assets which are not part of the general assets of the estate. The Koutoudakis court held that the administrator was liable under his bond to account for money received as damages for the decedent’s death, even though this money was not personal property and not part of the general estate. Id. at 470.
In Koutoudakis, the monies at issue did not exist prior to the decedent’s death. They only became available after the decedent’s death; indeed, specifically because of his death. Here, however, the stocks of the New York corporations existed prior to the decedent’s death and were not part of his Massachusetts ancillary estate at the time of his death. The stocks and bonds, and subsequently the assets from the sale of these items, remain part of the decedent’s personal property in the New York ancillary estate.
The Kaltsas court held that “Kaltsas acted unlawfully in selling the stocks and bonds of the non-Massachusetts corporations and placing the proceeds of the sales in her individual accounts.” Kaltsas, 22 Mass.App.Ct. at 691. The only issue before this court, however, is whether Kaltsas breached her fiduciary duty to the decedent’s Massachusetts ancillary estate. Kaltsas, as administratrix of the Massachusetts ancillary estate, had no legal obligation to administer assets outside the ancillary estate. Western Surety’s bond was only issued for property in the Massachusetts ancillary estate, i.e., property subject to administration in Massachusetts, and not for assets which Kaltsas handled in anything other than her capacity as Massachusetts ancillary administratrix. Western Surety, therefore, cannot be held liable for Kaltsas’ *634 maladministration of property outside the Massachusetts ancillary estate.
2. Western Surety’s Liability for Kaltsas’ Failure to Render an Annual Account of the Massachusetts Ancillary Estate
A surety on a bond is liable for any default of an executrix or administratrix in not accounting for assets received before as well as after the execution of the bond. McIntire v. Linehan, 178 Mass. 263, 267 (1901); Choate v. Arrington, 116 Mass. at 557; Dawes v. Edes, 13 Mass. 177, 178 (1816). Failure to render an account is a technical breach of the bond, even if no one has suffered any actual damage. G.L.c. 205, §23; Grant v. Crowley, 217 Mass. 552 (1914); McIntire v. Linehan, 178 Mass. at 267.
This technical breach, however, can be cured by the filing of the account. If the fiduciary is able to account satisfactorily for all of the estate which came into her hands, even after an action on the bond has been commenced and she has caused no damages by neglect or maladministration, no execution will be issued in any amount as a result of the action on the bond. Campbell v. Employers’ Liab. Assur. Corp., 319 Mass. 624, 627 (1946).
Kaltsas has technically breached her bond by failing to file an annual accounting of the Massachusetts ancillary estate, and Western Surety is liable for this breach. The plaintiffs allege that the ancillary estate has been harmed by Kaltsas’ conversion of assets both within and from outside the ancillary estate. As discussed supra, Western Surety is not liable for Kaltsas’ sale of stocks not within the ancillary estate. The appeals court held that the sale of stocks within the ancillary estate was made by agreement with the remaindermen. Kaltsas, 22 Mass.App.Ct. at 690, n.2. Therefore, the accounting for which Western Surety is liable is an annual accounting of the proceeds from the sale of Massachusetts corporate stock and the Oxford real estate. Id.
In 1990, the Probate Court found that “the proceeds left in the [Massachusetts] estate from the $250,000 [proceeds from the sale of Massachusetts corporate stock] and expenditures made therefrom have been done with authorization from the Court and have been duly accounted for . . . , and remain fully accounted for by virtue of the Court’s orders and assents of the parties.” Here, all the ancillary assets have been monitored by the Probate Court and all expenditures have been authorized by that court, even though Kaltsas did not provide it with an annual accounting.
As Kaltsas technically breached her bond by not providing an annual accounting of the Massachusetts ancillary estate, the defendant’s motion for summary judgment on Count IV is denied with regard to this issue. The plaintiffs’ motion for summary judgment is also denied, as they have not submitted evidence that they have been harmed by Kaltsas’ failure to file an annual accounting of the ancillary estate. Kaltsas may cure this breach by submitting, retroactively, annual accountings of the ancillary estate. 21 Sean M. Dun-phy, Massachusetts Practice §34.5 (2d ed. 1997).
3. Western Surety’s Liability for Kaltsas' Failure to File Correct Tax Returns in a Timely Manner
Pursuant to G.L.c. 62C, §17, 26 U.S.C. §6075(a), and I.R.C. §6018(a), the executrix or administratrix of a decedent’s estate is required to file state and federal estate tax returns within nine months of her appointment. Kaltsas was appointed ancillary administratrix of the Massachusetts estate in June 1981. She did not file either state or federal estate tax returns until November 1987, and did not file a federal income tax return until March 1988. In addition, Kaltsas claimed deductions that were deemed by the Internal Revenue Service to be inappropriate. These deductions have caused the decedent’s estate to be liable for interest, penalties, and additional taxes.
The plaintiffs allege that Western Surety is liable to the decedent’s estate for all interest, penalties, and taxes paid which resulted from Kaltsas’ maladministration of the estate. Although Kaltsas may have assumed the duties of the executor of the decedent’s gross estate, Western Surety, as discussed supra, is only liable for those acts of Kaltsas which are directly related to her duties as administratrix of the Massachusetts ancillary estate.
The plaintiffs next argue that even if Western Surety is only liable for the ancillary estate, then Western Surety is liable for approximately twenty percent of the taxes, interest, and penalties of the global estate, as, according to their calculations, the ancillary estate comprises approximately twenty percent of the decedent’s global estate.[9] If Western Surety is found liable for the taxes, interest, and penalties which resulted from maladministration of the Massachusetts ancillary estate, it will not be liable for a percentage of the total amount due, i.e., the percentage that the Massachusetts ancillary estate represents in the decedent’s global estate. Rather, Western Surety will only be liable for the amounts which resulted from Kaltsas’ maladministration of the Massachusetts ancillary estate. This amount may be a greater or lesser sum than twenty percent of the total amount owed.
a. Massachusetts Estate Taxes, Interest and Penalties
Assets with which to pay ancillary estate taxes must be found either within the ancillary or principal estate. Here, the Probate Court placed the Massachusetts ancillary estate’s assets under a restraining order at the request of all the beneficiaries in February 1983. This order prevented Kaltsas from using the sole liquid asset in the ancillary estate — the proceeds from the sale of stock from Massachusetts corporations — for any purpose whatsoever, including to pay taxes.[10] *635 This restraining order was not imposed due to Kaltsas’ mismanagement of the ancillary estate. Rather, it was imposed because Kaltsas allegedly mismanaged non-Massachusetts assets by bringing them into the Commonwealth and allegedly converting them for her own use.
Kaltsas administered the ancillary estate in accordance with the court’s orders. As she did not have assets within her ancillary administration with which to pay the Massachusetts estate taxes, interest and penalties accrued.[11] The taxes remained unpaid because the only assets which could be used for payment were restrained by the Probate Court until October 1989. Accordingly, Western Surety cannot be found liable on its bond. See McIntire v. Cottrell, 185 Mass. 178, 180 (1904) (surety may defend suit on bond successfully by showing the assets have been used according to the law). See also Cowden v. Jacobson, 165 Mass. at 244 (an administrator who does not administer the estate according to the law is liable upon his bond).
Kaltsas, as ancillary administratrix, had no right, title, or control of assets outside the ancillary estate with which to pay the ancillary estate taxes. Administrators cannot be compelled to use the proceeds of the domiciliary estate to pay the debts of the ancillary estate. McCurdy v. McCurdy, 197 Mass. 248, 251 (1908). See Cowden v. Jacobson, 165 Mass. at 243 (an administrator of both ancillary and domiciliary estates cannot be compelled to apply the personal property of the domiciliary estate to the payment of debts in the ancillary estate, nor can he be held accountable for failing to apply assets outside the ancillary estate towards the ancillary estate’s debts). Western Surety cannot be held liable where the principal on its bond does not have access to assets with which to pay taxes owed. -
The plaintiffs cite G.L.c. 65A, §§5-5A, as holding Kaltsas liable for the interest, penalties, and taxes on the ancillary estate. These statutes are inapplicable to the ancillary estate, as the decedent was a resident of Greece. First Nat. Bank of Mount Dora v. Shawmut Bank of Boston, N.A., 378 Mass. 137, 143 (1979) (G.L.c. 65A, §5, applies only to the estates of Massachusetts residents). Accordingly, these statutes do not demonstrate that Western Surety is liable on its bond for the nonpayment of estate taxes on the ancillary estate.
Consequently, there is no basis for Western Surety’s liability for interest, penalties, and taxes which resulted from Kaltsas’ nonpayment of Massachusetts estate taxes, even from June 16, 1981, when Kaltsas was appointed ancillary administratrix, through February 1983, when the Probate Court restrained the use of assets within the ancillary estate. Western Surety’s motion for summary judgment on this issue is therefore allowed.
b. Federal Estate and Federal Income Taxes, Interest, and Penalties
The ancillary administratrix does not have the authority to file federal tax returns. Only the domiciliary executrix may file the federal tax returns, because the federal returns include assets not within the ancillary administratrix’s administration. While the ancillary administratrix should provide the domiciliary executrix with the appropriate information regarding the ancillary estate, she may not file the federal tax returns. See Poole v. Garret, 15 F.2d 892, 893-94 (D.C. Cir. 1926) (where an administrator holds assets which ought to be paid to a guardian, and one person is both administrator and guardian, the law, by implication, considers it in the possession of the party in that representative character that ought to receive it); Lawton v. National Surety Co., 248 Mass. at 446 (an ancillary executor is in no sense the agent of a domiciliary executor, and an ancillary executor’s authority is independent and exclusive within the jurisdiction of his appointment). Accordingly, Western Surety cannot be held liable for Kaltsas’ failure to pay the decedent’s federal income tax and federal estate taxes in a timely manner, nor can it be held liable for any interest or penalties which may have accrued.
Western Surety’s motion for summary judgment on Count IV is allowed to the extent that it is not liable for the ancillary administratrix’s actions regarding anything but the decedent’s Massachusetts ancillary estate and it is not liable for any interest, penalties, and additional taxes imposed on the ancillary estate by the late filing of the Massachusetts estate, federal estate, and federal income tax returns.
C. Western Surety’s Liability for Kaltsas' Alleged Acts of Conversion
The plaintiffs allege that Kaltsas sold the decedent’s shares of stock in New York corporations and subsequently brought those assets into the Commonwealth and converted them for her own use. As discussed supra, in this action Kaltsas is not accountable for any assets received in any capacity other than that of ancillary administratrix. See 1 Thomas H. Belknap, Newhall’s Settlement of Estates and Fiduciary Law in Massachusetts §8:6 (5th ed. 1994); Globe Indemnity Co. v. Bruce, 81 F.2d 143, 154 (10th Cir. 1935)(“Under the weight of authority, the liability of sureties on an administrator’s or executor’s bond does not extend to property which does not constitute assets of the estate even though the personal representative has taken possession of such property and treated it as assets of the estate. The personal representative cannot extend the liability of the surety by taking possession of property not an asset of the estate”).
Western Surety, as surety for Kaltsas’ actions as Massachusetts ancillary administratrix, cannot be found liable for Kaltsas’ alleged conversions of assets in the decedent’s foreign estates. Kaltsas, 22 Mass.App.Ct. at 690 n.2. See Feeney v. Feeney, 335 *636 Mass. at 537. Accordingly, the defendant’s motion for summary judgment on Count V is allowed.
D. Western Surety’s Liability for Kaltsas' Alleged Waste of the Real Property
The plaintiffs claim that Kaltsas has committed waste against the real property in the decedent’s ancillary estate, and that Western Surety is liable for Kaltsas’ actions. The part of the Massachusetts ancillary estate which is comprised of real estate consists of a parcel of land in Oxford, Worcester County, and the dwelling thereon.
Generally in Massachusetts, title to real property vests immediately in the heirs, and the administratrix has no right to take possession of the real properly or to convey it to another. Indeed, her only right is to sell the real property under a license of the court if it is needed to pay debts or to sell under the power contained in the will. Prior to obtaining such a license or exercising the power, the administratrix is legally a stranger to the real property. 1 Thomas H. Belknap, supra at §9:10 (5th ed. 1994); Shrewsbury v. Murphy, 333 Mass. 290, 292 (1955). If the real property does not pass into the administratrix’s hands, the surety on her bond is not liable for its neglect. Taylor v. Hanlon, 248 N.W. 509, 511 (1933).
The decedent’s real estate in Massachusetts passed directly to his naked owners (remaindermen) upon his death, with an usufruct (life estate) in Kaltsas in her individual capacity.[12] Actions for waste or neglect as a matter of law lie against Kaltsas in her individual capacity, not as the administratrix. Brockelman himself has acknowledged that the administrator of an estate does not have a right to occupy, repair, preserve, or sell the real estate unless authorized to do so by court order.[13] As a matter of law, an action for waste and/or neglect lies against the life tenant in that capacity. Consequently, Kaltsas cannot be held liable in her capacity as ancillary administratrix for any waste of the decedent’s real estate in Massachusetts.
If Kaltsas did commit any waste and/or neglect, it was committed by her in her individual capacity and not as ancillary administratrix. As Kaltsas, in her capacity as ancillary administratrix, cannot be held liable on an action of waste or neglect of the decedent’s real estate, neither can Western Surety be held liable for any waste or neglect of the Massachusetts real estate. Accordingly, the defendant’s motion for summary judgment on Count VI is allowed.

ORDER

It is therefore ORDERED that defendant Western Surety’s motion for summary judgment on Count IV be DENIED to the extent that the ancillary ad-ministratrix breached her bond by not providing an annual accounting of the ancillary estate and be ALLOWED to the extent that it is not liable for the ancillary administratrix’s actions regarding anything but the decedent’s Massachusetts ancillary estate and it is not liable for any interest, penalties, and additional taxes imposed upon the ancillary estate by the late filing of Massachusetts estate, federal estate, and federal income tax returns; its motion for summary judgment on Counts V and VI be ALLOWED; and the plaintiffs’ motion for summary judgment on Counts IV, V, and VI be DENIED.

 The Honorable John J. Moynihan is a party pursuant to G.L.c. 205, §24.

 There is disagreement among the parties regarding whether Kaltsas is the domiciliary executrix. The plaintiffs argue that she is not the domiciliary executrix, as there is no record indicating that she was appointed executrix of the domiciliary estate, and Greek law does not require a formal administration of a decedent’s estate. However, in Kaltsas v. Kaltsas, 22 Mass.App.Ct. 689, 692-93, rev. denied, 398 Mass. 1105 (1986), an earlier proceeding regarding Kaltsas’ fiduciary activities regarding the decedent’s estate, the court found that (1) the Greek courts had denied the motion of Paul H. Kaltsas, Jr., a remainderman of the decedent’s estate, to have Kaltsas removed as domiciliary executrix, and (2) the Greek courts had required Kaltsas to post a bond relative to the domiciliary administration. Whether Kaltsas was the domiciliary executrix or not, however, is immaterial to this action. The issue before this court is whether Kaltsas performed fiduciary activities outside the scope of her powers as administratrix of the Massachusetts ancillary estate.

 The cumulative sum of $883 which was found in several Massachusetts bank accounts was not listed in this inventory. No party has raised an issue relative to these funds.

 The Probate Court specifically stated that the Massachusetts ancillary administration consisted only of the real estate in Oxford, Massachusetts, the dwelling thereon, and the assets received from the sale of stock in the Massachusetts corporations.

 Coins valued at under $200 and funds totaling $883 from several Massachusetts bank accounts are also part of the ancillary estate. In a prior action, the Probate Court found that no party raised an issue relative to the corns. In this action, no party has raised an issue relative to the coins or the $883.

 The plaintiffs claim the ancillary estate consists only of the $250,000 in proceeds from the sale of stock in Massachusetts corporations and the Massachusetts realty.

 A court will not ordinarily permit the ancillary ad-ministratrix to sell real estate in order to pay Massachusetts creditors if it appears that there are sufficient assets within the principal administration with which the claim can be satisfied. 1 Thomas H. Belknap, Newhall’s Settlement of Estates and Fiduciary Law in Massachusetts §8:7 (5th ed. 1994).

 Even if Kaltsas’ hands were not tied by the court’s restraint order, the majority of interest and penalties which were imposed upon the ancillary estate were not the result of maladministration or neglect by the ancillary administratrix. The ancillary administratrix appropriately asserted nonresident decedent status and filed the appropriate affidavit. The Department of Revenue initially disputed this position, but Brockelman, the successor administrator, eventually settled this with the desired result.

 The Probate Court found that the Oxford real estate was held “jointly” by the decedent and Kaltsas, with the realty passing to Kaltsas as survivor upon the decedent’s death. See McCarthy v. Landry, 42 Mass.App.Ct. 488, rev. denied, 425 Mass. 1105 (1997). Upon the decedent’s death, Kaltsas owned an undivided one-half interest in the land outright; the remaindermen held title to the other undivided half of the real estate, and Kaltsas possessed a life estate in her individual capacity in the remaindermen's share.

 Letter from Michael Brockelman to the Board of Health of Oxford, dated March 19, 1993.